BRITISH AMERICAN MORTGAGE CO. v. JONES, COMPTROLLER-GENERAL.

.1. A FOREIGN CORPORATION exercising its corporate functions in this State is doing business here. The British-American Mortgage Co. loaning money in this State on real estate securities is thus doing business in this State.

2. CONSTITUTION.—A FOREIGN CORPORATION having paid the license required by the Act of 1893, to enable it to do business in this State, and doing business under said license, cannot be required by a subsequent Act (1904, 24 Stat., 462), to pay an additional tax not levied on domestic corporations.

Petition in the original jurisdiction of this Court by the British American Mortgage Co. against A. W. Jones, Comptroller General, for injunction.

*Messrs. Thomas & Thomas* and *B. L. Abney,* for petitioner, cite: *The petitioner is not amenable to the license tax imposed by act of 1904:* 13 Ency., 869; 43 La. Ann.,' 516; 49 *Id.,* 9, 390; 16 S. W., 563; 83 Fed., 403; 88 Fed., 7; 155 U. S., 648; 117 Ala., 680; 55 Fed., 743; 71 Ala., 60; 103 Ala., 371; 89 Ala., 371; 44 Wis., 387; 93 Tenn., 590; 125 Ala., 121; 189 U. S., 408; 5 Exch., 822; 5 H. L. Cas., 416; 1. Q. B., 823; 113 U. S., 727; End. on Int. of Stat., sec. 169; 2 Q. B., 430; 66 Ark., 466; 165 U. S., 589; 96 U. S., 440; 15 Wall., 300. *If statute applies, it is unconstitutional:* 66 S. C., 37; 113 U. S., 703; 165 U. S., 150; 63 S. C., 431; 127 U. S., 205; 63 S. C., 169; 38 S. C., 116; 172 U. S., 239; 125 U. S., 184; 9 Wheat., 1; 12 Wheat., 419; 96 U. S., 1; 102 U. S., 691; 7 How., 283; 8 Wall., 168; 119 U. S., 110.

*Attorney General D. C. Ray,* contra, cites: *State may make such regulations as it deems best in regard to foreign corporations:* 32 S. C., 345; Code of 1902, 1661, 1787. *Exaction of this fee does not attempt to regulate inter-state commerce:* 189 S. W., 408.

March 8, 1907. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an application to the Court, in the exercise of its original jurisdiction, for an order of injunction restraining the Comptroller General from enforcing the provisions of an act entitled "An act to require the payment of annual license fees by corporations doing business in this State, and reports to the Comptroller General" (24 Stat., 462).

The petitioner is a foreign corporation, the principal business of which is lending money upon mortgages of real estate.

On the 26th of November, 1894, the petitioner filed a declaration in the office of the Secretary of State, in pursuance of an act entitled, "An act to declare the terms on

which foreign corporations may carry on business and own property within the State of South Carolina," approved 23d December, 1893.

In said declaration the petitioner stated, that it was the owner of property in this State—referring to the investments made by it upon mortgages of real estate situate in said State—and designated as its place of location in South Carolina, the office of E. K. Palmer, in the city of Columbia, and named said Palmer as its agent, upon whom process should be served.

The manner of transacting business is as follows: "A person in South Carolina who desires to make a loan from this company, forwards his application to the home office of the company, in the city of New York, where the application is accepted or rejected. If accepted, the notes and mortgages are prepared in New York and sent to the applicant in South Carolina, who executes them in South Carolina, and forwards them to New York with draft attached, which draft is paid in New York. According to the terms of the contract, the debt is payable in New York, and as a matter of fact, is collected and paid in that city."

The attorneys of the respective parties to this proceeding entered into the following agreement: "It is agreed that this case be heard by the Supreme Court upon its merits, upon the facts as stated in the petition, and accompanying exhibits, and in the return and answer."

The first question that will be considered is, whether the facts show that the petitioner was doing business in this State.

Section 1787 of the Code of Laws is as follows: "It shall be a further condition precedent to the right of any such (foreign) corporation to do business in this State, that it shall be taken and deemed to be the fact, irrebutable, and part and parcel of all contracts entered into between such corporation and a citizen or corporation of this State, that the taking or receiving, from any citizen or corporation of this State of any charge, fee, payment,

toll, impost, premium, or other moneyed or valuable con-
sideration, under or in performance of any such contract or
of any condition of the same, shall constitute the doing of its
corporate business within this State, and that the place of
the making and of the performance of such contract shall be
deemed and held to be within this State, anything contained
in such contract, or any rules or by-laws of such corporation,
to the contrary notwithstanding."

This section clearly shows that the petitioner was doing
business in this State.

Even if this statute had not been enacted, the exercise by
the petitioner of the corporate functions hereinbefore men-
tioned, would have constituted the doing of business in this
State.

*Chattanooga Nat. B. & L. Assn.* v. *Denson,* 189 U. S.,
408, 415; 23 Sup. Ct. Rep., 630, in which it was decided
that the granting of a loan by a Tennessee building and loan
Association to a citizen of Alabama, upon the latter's signed
application, solicited by a traveling agent for the associa-
tion, and the taking of a note and mortgage executed within
the State by the borrower, as security, constitute, regardless
of the form and terms of such instruments, the doing of
business in the State, within the meaning of the Alabama
Constitution and statutes, requiring foreign corporations
doing any business within the State to designate a local
agent for service of process, and to have a known place of
business within the State.

The attorneys for the petitioner contend, that the case just
mentioned is materially different from that under consider-
ation, in that there was no agent of the petitioner in this
State soliciting business. The Court, however, did not rest
its decisions upon that fact, but on the ground that the
foreign corporation exercised within the State of Alabama
some of he functions for which it was created. The Court
used this language: "Counsel has discussed at some length,
the *situs* of contracts, and by the law of what place they are
determined. We think, however, that the discussion is not

relevant. It withdraws our consideration from the Constitution and statute of Alabama; and, it is manifest, the contention based upon it, if yielded to, would defeat their purpose. The prohibition is directed to the doing of any business in the State, in the exercise of corporate functions; and there can be no doubt that petitioner considered that it was exercising such functions in the State. * * * The application of Denson was presumably solicited as other applications were, and if what was done in pursuance of it, did not constitute doing business in the State, the effect would be, as expressed by the Circuit Court of Appeals, that petitioner and other foreign associations, engaged in the same business of loaning money on real security, may safely flood the State of Alabama with soliciting agents, make all the negotiations for the loans, take real estate securities therefor, and fully transact all other business pertaining to their corporate functions as though incorporated therein, and yet neither be obliged to have a known place of business, or any authorized agent within the State, nor pay any license tax or fee, as required of non-resident corporations doing business therein."

The next question to be determined is, whether the act of 1904, as hereinafter mentioned, is in violation of the contract by which the petitioner was permitted to do business in this State.

When the petitioner was granted permission to carry on its business in this State, the act of 1892 (page 89), was of force, which provided that foreign land loan associations not incorporated under the laws of South Carolina should, before transacting any business in the State, pay a license fee of one hundred dollars; which sum was paid by this petitioner. This provision was incorporated in the Code of Laws as section 1800.

The act of 1893 (21 Stat., page 409), was effective at the time the petitioner was allowed to do business in this State, and contains the provision, "that foreign corporations duly incorporated under the laws of any State of the United

States, or of any foreign country, in treaty and amity with the said United States, are hereby permitted to locate and carry on business within the State of South Carolina, in like manner as the natural born citizen of the States of the United States, or of such foreign country might do under the law, existing at the time, subject, nevertheless, to the terms and conditions in this act hereafter set forth." This provision became section 1779 of the Code of Laws, which was amended by the act of 1904 (24 Stat., page 435), so as to read as follows: "Foreign corporations duly incorporated under the laws of any State of the United States, or of any foreign country in treaty and amity with the said United States, are hereby permitted to locate and carry on business within the State of South Carolina, in like manner and with like powers, as corporations of like kind and class, created under the laws of this State, subject nevertheless to the terms and conditions in this chapter hereafter set forth."

Sections 4 and 5 of the act of 1904 (the title of which has already been set out), are as follows: "Sec. 4. Every corporation organized under the laws of this State to do business for profit, other than railroad companies, express companies, street railway companies, navigation companies, water works companies, power companies, light companies, telephone companies, telegraph companies, parlor, dining and sleeping car companies shall, upon the filing of the report required of them in section 1, pay to the State Treasurer, on or before the first day of April, in each year, an annual license fee of one-half of one mill upon each dollar paid in to the capital stock of said corporations, said license fee to be not less than five dollars in any case.

"Sec. 5. Upon the filing of the report required of foreign corporations in section 2, the Comptroller General shall, from the facts thus reported, and any other facts coming to his knowledge, determine the value of the property of such corporation used within this State by them, in the conduct of their business, and shall file a statement of the value so

determined, with the license tax payable thereon with the
State Treasurer, who shall charge and collect from such
company, in addition to the initial fees provided for in the
Code of Laws for South Carolina, 1902,, and acts amend-
atory thereto, an annual license fee of one-half mill, upon
each dollar of the value of the property of such corporation,
used within this State in the conduct of its business."

In the case of *Am. S. & R. Co.* v. *Colorado ex rel. Linds-
ley,* 27 Sup. Ct. Rep., 108, it was held that a right to do busi-
ness in the State, without being subject to any greater
liabilities than those imposed upon domestic corporations,
was acquired by a foreign corporation, upon its admission
into the State of Colorado, under the laws then of force,
which subjected foreign corporations to the liabilities, re-
strictions and duties imposed upon domestic corporations of
like character, and such right was impaired by an act of that
State subsequently enacted, which required such corporation
to pay an annual license fee, in double the amount of that
imposed upon domestic corporations.

The Court uses this language: "A provision in a statute
of this nature, subjecting a foreign corporation to all the
liabilities, etc., of a domestic one of like character, must
mean that it shall not be subjected to any greater liabilities
than are imposed upon such domestic corporation. The
power to impose different liabilities was with the State at
the outset. It could make them greater or less than in case
of a domestic corporation, or it could make them the same.
Having the general power to do as it pleased, when it en-
acted that the foreign corporation, upon coming in the State,
should be subjected to all the liabilities of a domestic corpo-
ration, it amounted to the same thing as if the statute had
said, the foreign corporations should be subjected to the
same liabilities. In other words, the liabilities, restrictions
and duties imposed upon domestic corporations, constitute
the measure and limit of the liabilities, restrictions and
duties which might thereafter be imposed upon the corpora-

tions admitted to do business in the State. It was not a mere license to come in the State and do business therein, upon payment of a sum named, liable to be revoked or the sum increased at the pleasure of the State. It was a clear contract that the liabilities, etc., should be the same as the domestic corporation, and the same treatment in that regard should be measured out to both.

"If it were desired to increase the liabilities of the foreign, it could only be done by increasing those of the domestic corporations, at the same time and the same extent. * * * Nor is this a case where the power given by the State Constitution to the General Assembly to alter, amend, or annul a charter is applicable. The act does not alter the charter, or annul, or amend it. It simply increases the taxation which up to the time of its enactment had been imposed upon all foreign corporations doing business in the State. * * * It is unnecessary to refer to the many cases cited by both parties hereto. Some of them refer to the question as to the nature of such tax, while others decide upon the facts appearing in them, whether there was a contract or not. As already stated, the name of the tax or its kind is not important, so long as it is plain that the act of 1902 increases the liabilities of the foreign corporation over those which obtain in that of the domestic.

"And in regard to the cases of contract, while the principle that a contract may arise from a legislative enactment has been reiterated times without number, it must always rest for its support in the particular case, upon the construction to be given the act, and in this case we are greatly aided by the former cases regarding taxation and legislative contract."

Under the act of 1893 hereinbefore mentioned, the petitioner, upon being permitted to do business in this State, was subject only to such liabilities, restrictions and duties as were imposed on "natural born citizens of the States of the United States;" and, as the citizens of this State engaged in busi-

15—76

ness of like character with the petitioner, were not required to pay a license fee, it could not be exacted of the petitioner.

It is the judgment of this Court that the prayer of the petitioner be granted.

*A rehearing has been granted in this case.*