WESTERN UNION TELEGRAPH CO. v. ANDREWS et al.

(Circuit Court, E. D. Arkansas, W. D. June 22, 1907.)

1. CORPORATIONS—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE—FAILURE TO COMPLY WITH LAW—PENALTIES—ACTIONS—NATURE AND FORM.

An action to recover a penalty against a foreign corporation for doing business in Arkansas without complying with Act May 13, 1907, was not a criminal prosecution, so as to be beyond the jurisdiction of the federal courts of chancery sitting in that state to enjoin the maintenance thereof, but was entirely a civil proceeding.

[Ed. Note.—Enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. of New York v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

2. COURTS—FEDERAL COURTS—JURISDICTION—ACTION AGAINST STATE.

Act Ark. May 13, 1907, provides that foreign corporations shall not do business in the state until they have complied with the act, which requires the filing of a copy of the articles of incorporation, with the consent that service of process may be had on the Secretary of State, and that it will not remove any action against it to any federal court without consent of the other party, requires payment of certain specified fees, and declares that any foreign corporation failing to comply and doing business in the state shall be subject to a fine of not less than $1,000, to be recovered in suits to be brought in the name of the state by the prosecuting attorneys for the benefit of the county in which the suit is brought, and paid into the county's general revenue; one-fourth of the recovery to belong to the prosecuting attorney as a part of his compensation. Held, that a suit by a foreign telegraph company, having failed to comply with such act, against the prosecuting attorneys of the judicial circuits of the state, to restrain them from instituting any proceedings to recover penalties against complainant for its refusal to comply with the act on the ground that it was unconstitutional, was an action against the defendants merely in their capacity as attorneys for the state, and was in effect a suit against the state, within Const. U. S. Amend. 11, declaring that the judicial power of the United States shall not extend to any suit commenced or prosecuted against one of the United States by citizens of another state, etc.

[Ed. Note.—Federal jurisdiction of suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.]

3. SAME—STATE AS PARTY.

No suit can be maintained in the courts of the United States against the officers of a state, when the state, though not named in the pleadings, is the real party against which the relief is asked and the judgment will operate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 844½.]

4. SAME.

A suit is maintainable in the federal courts against a state officer claiming under an unconstitutional state statute, where he holds posses-

sion or is about to take possession or commit a trespass on property belonging to or in plaintiff's possession.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 844½.]

**5. STATES—STATE OFFICERS—ACTIONS AGAINST OFFICERS.**

The exemption of a state from judicial process does not protect its officers and agents from personal liability in an action of tort by a private person whose rights of property have been wrongfully invaded or injured by the authority of the state; and in case the remedy at law is inadequate the officers may be restrained by injunction from doing positive acts for which they would be personally liable for taking or injuring plaintiff's property in violation of the Constitution and laws of the United States.

**6. SAME—REAL PARTY IN INTEREST.**

A state is the real party in interest in a suit brought against its officers, when the relief sought is that which inures to the state alone, or when the suit will have the effect of depriving the state of funds or property in its possession.

**7. SAME—ENFORCEMENT OF TARIFF.**

An action to prevent the enforcement of a tariff which is unreasonable and confiscatory, and which is to be enforced by a commission or other officials acting merely as administrative agents for the state, is not one against the state, if the act is unconstitutional and void as against the plaintiff; but the rule is otherwise where the proceeding is against the officers of the state to test the constitutionality of the statute in the enforcement of which the officers will act only by formal judicial proceedings in the courts of the state as its attorneys.

Rose, Hemingway, Cantrell & Loughborough, Henry D. Estabrook, and Rush Taggart, for complainant.

William F. Kirby, Atty. Gen., and Lewis Rhoton, Pros. Atty., for defendants.

TRIEBER, District Judge. The complainant, a corporation existing under the laws of the state of New York and engaged in the business of conveying messages by telegraph, seeks by this bill to enjoin the defendants, who are the prosecuting attorneys of the 17 judicial circuits of the state of Arkansas, from instituting against it any proceedings for penalties for its failure or refusal to comply with the provisions of an act of the General Assembly of the state entitled "An act to permit foreign corporations to do business in Arkansas, and fixing fees to be paid by all corporations," approved May 13, 1907. The act is as follows:

"Section 1. Every company or corporation incorporated under the laws of other states, territory or country, including foreign railroad and foreign fire and life insurance companies, now or hereafter doing business in this state, shall file in the office of the Secretary of State of this state a copy of its charter or articles of incorporation or association, or a copy of its certificate of incorporation, duly authenticated and certified by the proper authority, together with a statement of its assets and liabilities, and the amount of its capital employed in this state, and shall also designate its general office or place of business in this state, and shall name an agent upon whom process may be served: Provided, before authority is granted to any foreign corporation to do business in this state, it must file with the Secretary of State a resolution adopted by its board of directors, consenting that service of process upon any agent of said company in this state, or upon the Secretary of State in this state in any action brought or pending in this state, shall be valid service upon said company; and if process is served upon

the Secretary of State it shall be his duty to at once send it by mail, addressed to the company at its principal office; and if any company shall, without consent of the other party to any suit or proceeding brought by or against it in any court of this state, remove said suit or proceeding to any federal court, or shall institute any suit or proceeding against any citizen of this state in any federal court, it shall be the duty of the Secretary of State to forthwith revoke all authority of said company and its agents to do business in this state, and to publish such revocation in some newspaper of general circulation published in this state; and if any such corporation shall thereafter continue to do business in this state it shall be subject to the penalty of this act for each day it shall continue to do business in the state after such revocation.

"Sec. 2. Any foreign corporation which shall fail to comply with the provisions of this act, and shall do any business in this state, shall be subject to a fine of not less than $1,000 to be recovered before any court of competent jurisdiction, and all such fines so recovered shall be paid into the general revenue fund of the county in which the cause of action shall accrue, and it is hereby made the duty of the prosecuting attorneys to institute said suits in the name of the state for the use and benefit of the county in which the suit is brought, and such prosecuting attorney shall receive, as his compensation, one-fourth of the amount recovered; and, as an additional penalty, any foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid, cannot make any contract in this state which can be enforced by it either in law or equity, and the complying with the provisions of this act after suit is instituted shall in no way validate said contract.

"Sec. 3. That all corporations hereafter incorporated in this state, and all foreign corporations seeking to do business in this state, shall pay into the treasury of this state for the filing of said articles a fee of $25 where the capital stock is $50,000 or under; $75 where the capital stock is over $50,000 and not more than $100,000, and $25 additional for each $100,000 of capital stock. Any foreign mutual corporation having no capital stock shall be required to pay to the Secretary of State for filing its articles of incorporation the sum of $500: Provided, however, nothing in this section shall apply to fraternal orders that write insurance.

"Sec. 4. That Act No. 185, approved April 17, 1907, and entitled 'An act to provide a manner in which foreign corporations may become domestic corporations, and for other purposes,' and all laws and parts of laws in conflict herewith, be and the same are hereby repealed."

The bill, so far as it is necessary to set it out for the purpose of the demurrer to the jurisdiction, charges that the complainant is now, and has been for years, engaged in the telegraph business throughout the United States, and within the state of Arkansas, having fully complied with the acts of Congress which are set out in the bill, and also the valid laws of the state of Arkansas; that it has invested over $160,000 in building and maintaining its lines and offices in this state, and that for certain reasons unnecessary to mention in this statement this act is unconstitutional as to complainant; that for this reason it does not deem itself bound to pay the fees attempted to be exacted from it by this act for the purpose of continuing its business in this state, and which fees, it is alleged, exceed $25,000; that the various prosecuting attorneys of the state in whose districts complainant is carrying on its business, unless restrained by the order of the court, will, as they have threatened to do, institute numerous actions for the recovery of the penalties prescribed by the act, which is no less than $1,000 for each alleged violation. Defendants challenge the jurisdiction of this court upon two grounds: First, that an action for the penalties is a

criminal prosecution, and for this reason it is not within the jurisdiction of this court, sitting as a court of chancery, to enjoin actions for their recovery; second, that the action is one against the state, which is not the real party to be affected thereby, and for that reason within the prohibition of the eleventh amendment to the Constitution of the United States.

1. As the act merely provides for the recovery of a penalty, it is, under the laws of the state of Arkansas, as construed by the decisions of its highest court, a civil suit, and not a criminal prosecution, within the meaning of the Constitution and laws of the state of Arkansas. Railway Co. v. State, 56 Ark. 166, 19 S. W. 572; Kansas City & C. R. R. Co. v. State, 63 Ark. 134, 37 S. W. 1047; St. L., I. M. & S. Ry. Co. v. State, 68 Ark. 561, 60 S. W. 654; C., O. & G., etc., Ry. v. State, 75 Ark. 369, 87 S. W. 631. In those cases the actions were instituted for alleged violations of section 6595, Kirby's Dig., digested in Mansfield's Digest as section 5478, and in Sandels & Hill's Digest as section 6196. That act provided for a penalty of $200 for the failure of any railroad company to blow its whistle or ring its bell when at least 80 rods from the place where the train crosses a road. Following the construction of the highest court of the state in the interpretation of its Constitution and statutes, the court holds that this is not an action to restrain criminal prosecutions, but an action to enjoin civil suits for the recovery of penalties.

2. Is this an action against the state, within the prohibition of the eleventh amendment to the Constitution? Counsel for both parties have cited numerous cases to sustain their respective contentions. A careful examination of these cases shows that the supposed conflicting views of the Supreme Court of the United States, as well as those of the national courts inferior to that tribunal, are not real, and that, considering carefully the facts in each case, there is little trouble in reconciling these supposed divergent views and arriving at a correct conclusion as to what is now the settled law as declared by the Supreme Court of the United States. The principle as laid down by Chief Justice Marshall in Osborn v. Bank of the United States, 9 Wheat. 738, 856, 6 L. Ed. 204, that a state is not sued unless it is named as a defendant upon the record, may be said to have been abandoned long ago. To review all the cases determined by the Supreme Court of the United States and the numerous inferior national courts on that subject since Osborn v. Bank of the United States would serve no useful purpose, as the later decisions review all these cases and formulate what must now be considered the law on that subject.

A leading case on that question is In re Ayers, 123 U. S. 443, 487, 502, 503, 8 Sup. Ct. 164, 31 L. Ed. 216. In that case Mr. Justice Matthews, delivering the opinion of the court, said:

"It must be held as the settled doctrine of this court, established by its recent decisions, 'that the question whether a suit is within the prohibition of the eleventh amendment is not always determined by reference to the nominal parties on the record.' This, it is true, is not in harmony with what was said by Chief Justice Marshall in Osborn v. Bank of the United States. 'The state not being a party on the record, and the court having jurisdiction over those who are parties on the record, the true question is not one of jurisdiction, but whether, in the exercise of its jurisdiction, the court ought

to make a decree against the defendants—whether they are to be considered as having real interests, or as being only nominal parties.' This conveys the intimation that where the defendants, who are sued as officers of the state, have not a real, but merely a nominal, interest in the controversy, the state appearing to be the real defendant, and therefore an indispensable party, if the jurisdiction does not fail for want of power over the parties, it does fail, as to the nominal defendants, for want of a suitable subject-matter."

After reviewing numerous authorities, the learned justice proceeds:

"A bill, the object of which is by injunction indirectly to compel the specific performance of the contract, by forbidding all those acts and doings which constitute breaches of the contract, must also necessarily be a suit against the state. In such a case, though the state be not nominally a party on the record, if the defendants are its officers and agents, through whom alone it can act in doing and refusing to do the things which constitute a breach of its contract, the suit is still, in substance, though not in form, a suit against the state. * * * It may be asked, what is the true ground of distinction, so far as the protection of the Constitution of the United States is invoked, between the contract rights of the complainant in such a suit, and other rights of person and of property? In these latter cases it is said that jurisdiction may be exercised against individual defendants, notwithstanding the official character of their acts, while in cases of the former description the jurisdiction is denied. The distinction, however, is obvious. The acts alleged in the bill as threatened by the defendants, the present petitioners, are violations of the assumed contract between the state of Virginia and the complainants, only as they are considered to be the acts of the state of Virginia. The defendants, as individuals, not being parties to that contract, are not capable in law of committing a breach of it."

In Fitts v. McGhee, 172 U. S. 516, 528, 19 Sup. Ct. 269, 274, 43 L. Ed. 535, the court said:

"To secure the manifest purposes of the constitutional exemption guarantied by the eleventh amendment requires that it should be interpreted, not literally and too narrowly, but fairly, and with such breadth and largeness as effectually to accomplish the substance of its purpose. In this spirit it must be held to cover, not only suits brought against a state by name, but those also against its officers, agents, and representatives, where the state, though not named as such, is nevertheless the only real party, against which alone in fact the relief is asked, and against which the judgment or decree effectively operates. * * * If these principles be applied in the present case, there is no escape from the conclusion that, although the state of Alabama was dismissed as a party defendant, this suit against its officers is really one against the state. As a state can act only by its officers, an order restraining those officers from taking any steps, by means of judicial proceedings, in execution of the statute of 1895, is one which restrains the state itself, and the suit is consequently as much against the state as if the state were named as a party defendant on the record."

In reply to the contention of counsel that the suit was not one against the state (Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014, Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819, and other cases similar to those there cited), the court distinguished those cases from the one before it, saying:

"Upon examination it will be found that the defendants in each of those cases were officers of the state specially charged with the execution of a state enactment alleged to be unconstitutional, but under the authority of which, it was averred, they were committing or were about to commit some specific wrong or trespass to the injury of the plaintiff's rights. There is a wide difference between a suit against individuals holding official positions under

a state, to prevent them, under the sanction of an unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officers of a state merely to test the constitutionality of a state statute, in the enforcement of which those officers will act only by formal judicial proceedings in the courts of the state. In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of an act passed by the Legislature could ·be tested by a suit against the Governor and the Attorney General, based upon the theory that the former, as the executive of the state, was in a general sense charged with the execution of all its laws, and the latter, as Attorney General, might represent the state in litigation involving the enforcement of its statutes."

The result of that decision was that the injunction which had been granted against these officers by the Circuit Court was dissolved and the cause directed to be dismissed for want of jurisdiction.

This distinction is aptly stated in Missouri, etc., Ry. Co. v. Missouri R. R. Com., 183 U. S. 53, 60, 22 Sup. Ct. 18, 21, 46 L. Ed. 78, where the court said:

"It is true that the state has a governmental interest in the welfare of its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws. But such general governmental interest is not that which makes the state, as an organized political community, a party in interest in the litigation; for, if that were so, the state would be a party in interest in all litigation, because the purpose of all litigation is to preserve and enforce rights and secure compliance with the law of the state, either statute or common."

In that case the state board had instituted suit for the purpose of enforcing certain orders regulating fares over a bridge. It was sought by the defendant to remove the cause to the United States court, and the court held that, a federal question being involved, it could be done. In the. case at bar the payment of the franchise tax is solely for the benefit of the state, and the penalties are only intended to enforce compliance with the law. Payment into the state treasury of the fees prescribed prevents all actions for penalties.

In Cotting v. Kansas City Stockyards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, the Attorney General of the state of Kansas had been joined with the corporation in a suit which was instituted by a stockholder for the purpose of preventing him from instituting proceedings for penalties for failure on the part of the stockyards company to comply with the laws of the state of Kansas regulating charges. The defense that a suit against the Attorney General was in fact a suit against the state was not raised in the court below, but for the first time in the Supreme Court. The court disposed of the question, in view of the fact that the question had not been raised in the court below, as follows:

"Without expressing any opinion as to the jurisdiction of the court, if it had been properly and seasonably challenged, we think the true solution of this matter will be found in directing a dismissal of the suit as to the Attorney General, without prejudice to any other suit or action."

In Belknap v. Schild, 161 U. S. 10, 18, 24, 16 Sup. Ct. 443, 40 L. Ed. 599, a bill had been filed against Belknap, a commodore of the

United States navy, in charge of a navy yard of the United States, for an infringement of letters of patent granted by the United States to the plaintiff for an improvement in caisson gates, and also to enjoin him from using it in the navy yard.  In holding that this was a suit against the United States, and for that reason could not be maintained, the court said:

"But the exemption of the United States from judicial process does not protect their officers and agents, civil or military, in time of peace, from being personally liable to an action of tort by a private person whose rights of property they have wrongfully invaded or injured, even by authority of the United States.  Such officers or agents, although acting under order of the United States, are therefore personally liable to be sued for their own infringement of a patent.  The extent to which officers or agents of the government may be restrained by injunction from doing unlawful acts to the prejudice of private rights is illustrated by the decisions of this court regarding injunctions from the courts of the United States to officers and agents of a state, which, by the Constitution of the United States, is as exempt as the United States are from private suits.  In a suit to which the state is neither formally nor really a party, its officers, although acting by its order and for its benefit, may be restrained by injunction, when the remedy at law is inadequate, from doing positive acts, for which they are personally and individually liable, taking or injuring the plaintiff's property, contrary to a plain official duty requiring no exercise of discretion, and in violation of the Constitution or laws of the United States.  But no injunction can be issued against officers of a state, to restrain or control the use of property already in the possession of the state, or money in its treasury when the suit is commenced, or to compel the state to perform its obligations, or where the state has otherwise such an interest in the object of the suit as to be a necessary party."

After reviewing numerous authorities the court announced its conclusion in the following language:

"In the present case the caisson gate was a part of the dry dock in a navy yard of the United States, was constructed and put in place by the United States, and was the property of the United States, and held and used by the United States for the public benefit.  If the gate was made in infringement of the plaintiff's patent, that did not prevent the title in the gate from vesting in the United States.  The United States, then, had both the title and possession of the property.  The United States could not hold or use it, except through officers and agents.  Although this suit was not brought against the United States by name, but against their officers and agents only, nevertheless, so far as the bill prayed for an injunction and for the destruction of the gate in question, the defendants had no individual interest in the controversy.  The entire interest adverse to the plaintiff was the interest of the United States in property of which the United States had both the title and the possession.  *  *  *  And the suit, therefore, could not be maintained without violating the principles affirmed in the long series of decisions of this court, above cited."

The same conclusion was reached in International Postal Supply Co. v. Bruce, 194 U. S. 601, 24 Sup. Ct. 820, 48 L. Ed. 1134.

In Minnesota v. Hitchcock, 185 U. S. 373, 386, 22 Sup. Ct. 650, 46 L. Ed. 954, the state of Minnesota sought to enjoin the Secretary of the Interior and the Commissioner of the General Land Office from selling certain lands, claiming that they had been granted to that state by previous acts of Congress.  One of the questions was whether this was not an action against the United States, and it was held that it was, although not a party to the suit, which was brought against the Secretary of the Interior; the court holding:

"The legal title to these lands is in the United States. The officers named as defendants have no interest in the lands or the proceeds thereof. The United States is proposing to sell them. This suit seeks to restrain the United States from such sale—to divest the Government of its title and vest it in the state. The United States is, therefore, the real party affected by the judgment and against which in fact it will operate, and the officers have no pecuniary interest in the matter. If whether a suit is one against a state is to be determined, not by the fact of the party named as defendant on the record, but by the result of the judgment or decree which may be entered, the same rule must apply to the United States. The question whether the United States is a party to a controversy is not determined by the merely nominal party on the record, but by the question of the effect of the judgment or decree which can be entered."

See, also, Oregon v. Hitchcock, 202 U. S. 60, 26 Sup. Ct. 568, 50 L. Ed. 935; Naganab v. Hitchcock, 202 U. S. 473, 26 Sup. Ct. 667, 50 L. Ed. 1113.

In Chandler v. Dix, 194 U. S. 590, 24 Sup. Ct. 766, 48 L. Ed. 1129, it was sought by an action against the Auditor General of the state of Michigan to cancel as a cloud on the title of real estate claimed by plaintiff certain sales of lands made to the state of Michigan for nonpayment of taxes under laws alleged to be unconstitutional and void. The statutes of Michigan provided that, in actions of that kind:

"The Auditor General shall be made a party defendant to all actions or proceedings instituted for the purpose of setting aside any sale or sales for delinquent taxes on lands held as state tax lands, or which have been sold as such, or which have been sold at annual tax sales, or for the purpose of setting aside any taxes returned to him and for which sale has not been made."

And it was held that the state of Michigan, in enacting this legislation, had in mind only proceedings of that nature in the courts of the state, and for this reason it was not a waiver of the immunity granted to the state from being sued in the national courts by the eleventh amendment to the Constitution.

A similar conclusion was reached by the court in Smith v. Reeves, 178 U. S. 436, 446, 20 Sup. Ct. 919, 44 L. Ed. 1140, arising under the statutes of the state of California.

In Arbuckle v. Blackburn, 113 Fed. 616, 51 C. C. A. 122, 65 L. R. A. 864, it was sought to enjoin the dairy and food commissioner of Ohio from prosecuting the vendors of a certain article of food, because of an alleged violation of the pure food laws of that state. The injunction was denied. Judge Day, now Mr. Justice Day of the Supreme Court, in delivering the opinion of the court, said after quoting from Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399:

"Upon the authority of this case and others decided in the Supreme Court, it seems clear that this action cannot be maintained consistently with the eleventh amendment to the Constitution, withholding the judicial power of the United States from suits in law or equity commenced or prosecuted against one of the United States by citizens of another state, or citizens or subjects of any foreign state. * * * The injunction sought is against the prosecution of suits in the Ohio courts which are about to be instituted by Blackburn, not in his individual capacity, but as an officer of the state. By the terms of the statute the dairy and food commissioner is an officer of the state expressly charged with the enforcement of all laws against frauds and adulterations or impurities in foods, drink, or drugs, and unlawful label-

ing in the state of Ohio. It is made his duty by statute to prosecute, or cause to be prosecuted, any person or persons, firm or firms, corporation or corporations, engaged in the manufacture or sale of any adulterated article or articles of food or drink, or adulterated in violation of or contrary to any laws of the state of Ohio. * * * What, then, is the object of the injunction sought in this case? It is no more nor less than to restrain the officer of the state from bringing prosecutions for violations of an act which such officer is expressly charged to enforce in the only way he is authorized to proceed—by bringing criminal prosecutions in the name of the state. This is virtually to enjoin the state from proceeding through its duly qualified and acting officers."

In Farmers' Nat. Bank v. Jones (C. C.) 105 Fed. 459, it was sought to compel the state debt board of Arkansas to issue funding bonds for other bonds. Judge Caldwell, who delivered the opinion of the court in refusing the injunction, said:

"The state debt board owes to the state the duty to do for and in the name of the state the things enjoined upon it by the act of the Legislature, and none other. The board as a board has no contract relations with the owners of lost or destroyed bonds, and stands in no relation to them which imposes on the board any duty towards them whatever; and if it be conceded that the state owes to the owners of lost or destroyed bonds, no matter by whose agency lost or destroyed, the duty of issuing new bonds in their stead, no federal court can coerce the state, or any of its officers or boards, by any form of suit or proceedings, to the performance of that duty."

See, also, Morenci Copper Co. v. Freer (C. C.) 127 Fed. 199; Union Trust Co. v. Stearns (C. C.) 119 Fed. 790.

Counsel for complainant laid great stress on what was decided in Western Union Tel. Co. v. Myatt (C. C.) 98 Fed. 335, and Haverill Gas Co. v. Barker (C. C.) 109 Fed. 694. In Western Union Telegraph Co. v. Myatt the facts were: The state of Kansas, by statute, had created a court called the "court of visitation," with powers and jurisdiction to try and determine all questions as to what were reasonable freight rates and other charges connected with the transportation of freight between points in the state, "the court" to possess full common-law and equity powers of the matters within its jurisdiction, and the pleadings to be styled "an information"; and it was made the duty of the state solicitor to file informations in the name of the state upon receiving sworn information of any violation of the act. If the state solicitor neglected his duties, that "court" was authorized to appoint a special solicitor. That "court" was authorized, after a hearing, to render a decree and specially find the facts it deemed most material, the value of the road and all property used in connection therewith, the actual cost thereof, the amount of the capital stock, the bonded and other indebtedness, what part is fictitious and fraudulent, if any, and many other facts specified which are deemed necessary for the information of the appellate court, if the decree of the court is appealed from. The Supreme Court was given appellate jurisdiction from the orders and decrees of that "court of visitation." The decree is to embody a complete schedule of the charges adjudged to be reasonable and the classification of freight necessary for the expression thereof. Any officer, agent, or employé of the company, and the company itself, was to be subject to a fine of $1,000 for every day for failure to comply with the terms of

the decree of that "court," and the "court" was directed to appoint a receiver to sequester the property of the company if it failed to comply with its orders or decree for 30 days. It is made the duty of the state solicitor to prosecute such offenses criminally and to recover the penalties by civil action. It also provides for the recovery of damages by parties injured by disobedience to the decree of the "court." This jurisdiction and power is also extended over telegraph companies. The bill charged that the rates fixed by that "court" for telegraphic messages were materially less than the cost of performance, that over 600 suits had been instituted against it for its refusal to transmit messages at the rates fixed, and that one Maxwell had filed complaint with the state solicitor, the defendant Myatt, and the latter had filed an information against the complainant, the Western Union Telegraph Company, in the "court of visitation." The bill for injunction made the state solicitor, Myatt, the informant, Maxwell, and the members of the "court of visitation" defendants, and asked that the act be declared unconstitutional as to it because the enforcement of the rates fixed would tend to deprive the complainant of its property without due process of law, and in violation of the fourteenth amendment to the Constitution. It was conceded that the proof showed that the rates fixed were not only not compensatory, but materially less than the actual cost of the service. These allegations and proofs, Judge Hook held, brought the case strictly within the rules established in the actions against state railroad commissions and was not within the rules laid down in Fitts v. McGhee, for there was authority to sequester the property of the corporation, which, if the act is void, would constitute a trespass. The court also held that it was not a court, but only an administrative body. The opinion is very exhaustive and able, but a careful perusal thereof shows that it can have no application to the case at bar as shown by the allegations in the bill.

In Haverhill Gaslight Co. v. Barker the action was against the Massachusetts gas commission and the Attorney General of that State. The act creating the commission authorized it, under certain circumstances, to fix the price of gas, and made it the duty of the Attorney General to enforce the orders made by the commission. It was alleged that the price fixed for the gas furnished by complainant was so low as not to cover the reasonable cost of manufacture, and for this reason the order was alleged to be in violation of the fourteenth amendment to the national Constitution. It was further charged that the commission and the Attorney General were about to enforce the orders fixing the price of gas at that confiscatory rate by instituting proceedings against complainant in the courts of the state, and such actions would prevent the company from collecting from its customers the amounts due it without litigation, and thus cause a multiplicity of suits. The court very properly held that this was not an action against the state, but a proceeding of the same nature as that against the state railroad commission for fixing transportation rates so low as to virtually amount to confiscation. The court in its opinion was governed by what was said by Justice Miller in Chicago, etc., Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 33 L. Ed. 970, and

Justice Shiras in Railway Co. v. Gill, 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567:

"That the remedy for a tariff alleged to be unreasonable should be sought in a bill in equity, or some equivalent proceeding, wherein the rights of the public, as well as those of the company complaining, can be protected."

No question of that kind is involved in this case; the only question being, shall the law officers of the state be enjoined from suing complainant for penalties alleged to have been incurred by reason of a failure to comply with its laws requiring a foreign corporation to file a copy of its charter and pay certain fees, upon the ground that the act is unconstitutional so far as the rights of complainant are affected thereby?

It is also claimed that Fitts v. McGhee is distinguishable from the case at bar, owing to the fact that in that case, as stated by Mr. Justice Harlan, who delivered the opinion of the court, neither the Attorney General nor the solicitor of the judicial circuit was charged with any special duty in connection with the statute sought to be annulled (172 U. S. 529, 19 Sup. Ct. 269, 43 L. Ed. 535), while in the act now under consideration it is "made the special duty of the prosecuting attorneys (the defendants) to institute suits in the name of the state" for the recovery of the penalty, and it is further provided that such prosecuting attorney "shall receive as his compensation one-fourth of the amount recovered." It has been the settled law of the state of Arkansas ever since its admission as a state that "all actions in favor of, and in which the state is interested, shall be brought in the name of the state in the circuit court of the county in which the defendant may reside or be found, and shall be prosecuted by the prosecuting attorney for the state prosecuting in such circuit" (section 7779, Kirby's Dig.), and that for his services he shall receive fees dependent in criminal cases upon conviction and in civil actions upon recovery and collection (section 3488, Kirby's Dig.).

For some reason the General Assembly of the state has seen proper in many instances to provide specially that it shall be the duty of prosecuting attorneys to prosecute offenses and institute or defend certain suits, and also provide specially for his compensation in some of these instances. Without enumerating all these special provisions, the following may be referred to as digested in Kirby's Digest of the Statutes: Section 592: To institute proceedings for violation of the civil rights act. Section 618: To prosecute clerks of courts when charged with a misdemeanor in office. Section 1748: To enforce the gaming laws. Section 1954: For violation of the obscene literature statute. Section 4100: To prosecute civil suits instituted by county timber inspectors for trespasses on the public domain. Section 5143: To prosecute violation of the liquor laws, and section 5147 fixes his fee for such conviction the same as for felonies, although the offense is only a misdemeanor. Section 5272: To prosecute violations of the dentistry act. Section 5286: To prosecute violation of the pharmacy act. Section 7189: To institute suits against collecting officers and their sureties.

For these reasons this provision of the act now in question must be treated merely as declaratory of the general laws of the state

making it the duty of the prosecuting attorneys to prosecute all actions in which the state is interested, and not as a special duty within the meaning of what was said in Fitts v. McGhee. The "special" duty there meant is clearly an administrative duty, such as is exercised by boards or ministerial officers, but not attorneys. Supposing the act had provided that suits for the recovery of these penalties should be instituted and prosecuted by special counsel employed by the Governor, and whose compensation should be one-fourth of the amounts recovered; could a federal court, under the decision of Fitts v. McGhee, enjoin the attorney thus employed by the Governor from proceeding under his employment without making the state a party?

A careful examination of the many authorities on this subject leads to the following conclusions as to when an action is against the state, or not such a suit, within the meaning of the eleventh amendment to the national Constitution:

(a) No suit can be maintained in the courts of the United States against the officers of a state when the state, though not named in the pleadings, is the real party against which the relief is asked and the judgment will operate.

(b) If an individual, although he be an officer and claims under a statute of the state, which statute is unconstitutional, holds possession or is about to take possession of, or to commit any trespass upon, property belonging to or in possession of the plaintiff, he cannot resist the judicial determination in a suit against him of the question of the right of such possession or threatened trespass by simply asserting that he held and was entitled to hold or seize the property in his capacity as an officer of the state, and for this reason the suit is one against the state.

(c) The exemption of the state from judicial process does not protect its officers and agents from being personally liable to an action of tort by a private person whose rights or property they have wrongfully invaded or injured, even by authority of the state, and when the remedy at law is inadequate its officers may be restrained by injunction from doing positive acts for which they would be personally liable for taking or injuring plaintiffs' property in violation of the Constitution or laws of the United States.

(d) It may be safely held that the state is the real party when the relief sought is that which inures to it alone, or when the action will have the effect of depriving the state of funds or property in its possession.

(e) The fact that the state has a governmental interest in the welfare of its citizens in compelling obedience to the legal orders of its officials for the benefit of the public at large is not that which makes the state as the organized political community a party in interest to the litigation. The interest must be one in the state as an artificial person, as distinguished from that of a government for the benefit of its citizens.

(f) The fact that the state voluntarily assumes the defense in the cause or litigation does not make it the real party. This is simply an incidental matter, and does not determine its relation to the suit.

(g) That an action to prevent the enforcement of a tariff which is unreasonable and confiscatory, and which is to be enforced by a commission or other officials who are merely acting as administrative agents for the state, is not one against the state, if the act itself is unconstitutional and void as against the complainant.

(h) A proceeding against officers of a state merely to test the constitutionality of a state statute in the enforcement of which the officers will act only by formal judicial proceedings in the courts of the state, as attorneys for the state, is in effect a suit against the state.

The allegations in the bill show that this is an attempt to prevent the state of Arkansas, through its officers, who by its laws are merely its attorneys, to represent it in all legal actions in its favor or in which it is interested, from instituting and prosecuting suits for the recovery of penalties incurred for alleged violation of its laws, actions which can only be instituted in the name of the state and for its use and benefit. The fact that the state, by its Legislature, has seen proper, for reasons which cannot be questioned by the courts, to donate the penalties, when recovered, to the counties in which they have accrued or are recovered, cannot change the conclusion that the suit is one against the state; for no one has a right to question what the state shall do with the moneys by it collected, especially when it sees proper to donate it to the counties, which are merely subdivisions and agencies of the state. Coffey v. Harlan County, 204 U. S. 659, 27 Sup. Ct. 305, 51 L. Ed. 666.

But, even if it be conceded that this part of the act is unconstitutional, it would not affect the remaining provisions. Railway Co. v. State, 56 Ark. 166, 19 S. W. 572. Nor is it material that a certain portion of these fees are to be paid to its attorneys for their services. For these reasons it is impossible to reach any other conclusion than that this action is in fact a suit against the state and within the inhibition of the eleventh amendment to the Constitution of the United States. To hold that a court may assume jurisdiction of an action against the attorneys of a party, and enjoin them from instituting suits for their client, when it is expressly prohibited from exercising such jurisdiction against the client, would be, to say the least, novel. In fact, how can a court of equity proceed against an attorney, affecting the right of his client, without having the client before it as a party to the suit? Hapgood v. Southern, 117 U. S. 52, 71, 6 Sup. Ct. 608, 29 L. Ed. 805; Chandler v. Dix, supra; Belknap v. Schild, supra.

The bill will be dismissed for want of jurisdiction.