RUSSELL v. ST. LOUIS, SOUTHWESTERN RAILWAY COMPANY.

Opinion delivered June 25, 1903.

1. RAILROADS—WHEN DOMESTIC.—The act of March 13, 1889, provides that any railroad company existing under the laws of another state may extend its railroad into this state, provided that, before it shall be permitted to avail itself of the benefits of the act, it shall file with the secretary of state a certified copy of its articles of incorporation, whereupon it "shall, to all intents and purposes, become a railroad corporation of this state," and that "in all suits against any such corporation process may be served upon the agent or agents of such corporation or corporations in this state in the same manner that process is authorized by law to be served upon the agents of railroad corporations in this state, organized and existing under the laws of this state. *Held* that a railroad corporation organized in a sister state, on complying with the act, becomes a domestic corporation and empowered to exercise the right of eminent domain. (Page 454.)

2. EMINENT DOMAIN—DAMAGES—INSTRUCTIONS.—In a suit by a railway company to condemn land for the erection of works to protect a bridge, whereby a levee of defendants was destroyed, it was error to instruct the jury not to "award defendants any damage

because they may believe from the evidence such damage will hereafter accrue to the defendants from the work as it now exists, but which may be prevented by proper construction, extension or maintenance of said work by the railroad;" and such error was not cured by an instruction, given at defendants' request, that in determining the owner's damage the jury should consider, as tending to prove decrease in market value, the reasonable cost of a new levee, the market value of a steamboat landing upon the land taken, and the increased danger of overflow of defendants' other land.   (Page 456.)

Appeal from Columbia Circuit Court.

CHARLES W. SMITH, Judge.

Reversed.

*Dan W. Jones, Arthur Neill* and *Oscar D. Scott,* for appellant.
Foreign corporations may do business as the law directs. Const., art. 12, § 11; Sand. & H. Dig. § 6326; Acts 1889, 43, 46; 13 Pet., 519; 10 How. 376; 28 Conn. 289.  No particular form of words is essential to the creation of a corporation.  Aug. & S., Corp., § 76; 22 Wend., 69; 73 Ala. 325; 25 S. E. 982.  Foreign corporations for the purpose of jurisdiction are domestic.  41 S. E. 963; 161 U. S. 545; 174 U. S. 552; 25 S. E. 982; 22 Neb. 628; 27 Neb. 699; 25 Neb. 156; 1 Black, 286; 51 Penn., 228; 118 U. S. 290; 136 U. S. 356.

*S. H. West* and *Gaughan & Sifford,* for appellees.

The inquiry in condemnation proceedings is the depreciation in value of the property.  Sedg. Dam., §§ 1149, 1163; 54 Ark. 145; 52 Ark. 243; Sedg. Dam., §124.  Appellee was entitled to exercise the right of eminent domain.  Sand. & H. Dig. § 6326; 12 Wall. 65; 66 U. S. 286; 80 U. S. 270; 96 U. S. 450; 108 U. S. 436; 161 U. S. 545; 118 U. S. 290; 87 U. S. 445.

BATTLE, J.   The St. Louis Southwestern Railway Company instituted proceedings in the Lafayette circuit court for the purpose of condemning certain lands of J. C. Russell and W. H. Russell for its use and benefit.   It represented in its complaint that it was a railway corporation duly organized under the laws of this state; that its road crosses Red river, over which it maintains a valuable bridge; that the bank of Red river where it crosses the same is caving and washing away in such manner as to endanger

the safety of the bridge, if it be not speedily arrested; that J. C. and W. H. Russell own a certain parcel of land on the bank of the river above the bridge and the railroad right of way, consisting of 8.97 acres, which is was necessary for it to acquire to enable it to do certain work to protect and save the bridge; and asked that such parcel be condemned for its use, and that damages on account thereof be assessed, and that in the meantime it be allowed to proceed with such work upon depositing with the clerk of the court a sum of money designated by the judge.

The plaintiff was permitted to begin and prosecute the work upon depositing $1,000 with the clerk.

J. C. and W. H. Russell answered, and denied that plaintiff was a domestic corporation, but alleged that it was a foreign corporation organized and existing under and by virtue of the laws of the state of Missouri, and that it did not have the power, under the constitution of Arkansas, to condemn or appropriate private property, and that in many ways they would be greatly damaged by such work.

At the time the jury was impaneled to assess the damages the work was completed. In the trial the following agreement was read as evidence:

"It is agreed between the parties hereto that the following stipulation of facts may be considered as evidence on the hearing of the above entitled cause pending in the circuit court of Columbia county, to-wit:

"That the plaintiff corporation did, within the time required by law, file with the secretary of state for the state of Arkansas a certified copy of its articles of incorporation (it having been incorporated under the general law of the state of Missouri), with a map and profile of the line, and did pay the fees prescribed by law for railroad charters, in obedience to section 6326, Sandels & Hill's Digest; and since the date of said filing plaintiff has continuously and still does operate its railroad on the same line mentioned in the said charter profile, etc. That within twelve months past said plaintiff has as often as two times removed causes pending between citizens of the state of Arkansas as plaintiffs and itself as defendant in the circuit courts of said state, to the proper circuit courts of the United States on the ground of diverse citizenship of the parties under the judiciary acts of congress."

Evidence was also adduced tending to prove that the defendants were the owners of a large farm, of which the 8.97 acres were

a part; that in the construction of the work a part of a levee built by the defendants for the protection of their farm was taken by the plaintiff, also a steamboat landing; that the work has caused much of the farm to cave into the river, and will probably continue to do so; and that by reason of the foregoing facts the present market value of the defendant's farm has been considerably reduced.

At the request of the defendants the court instructed the jury, in part, as follows:

"3. In determining the defendants' damages you may take into consideration as tending to show the decreased market value, the reasonable cost of any new levee that the proof shows by a preponderance may be required to supply the place of that taken by the plaintiff, the market value of any steamboat landing upon the land taken, if the proof shows that any such was taken, the increased danger of an overflow from Red river upon the defendants' plantation by reason of the construction of the so-called 'protection work,' if the preponderance of the testimony shows that there is such increased danger, and that the same has depreciated the market value."

And at the request of the plaintiff the court instructed the jury, in part, over the objections of the defendants, as follows:

"5. If the jury believe from the evidence that no damage will accrue to the defendants hereafter by reason of the work done on Red river, if the same is properly maintained and extended, as necessity may require, to prevent further damage hereafter, then they will not award defendants any damage because they may believe from the evidence such damage will hereafter accrue to the defendants from the work as it now exists, but which may be prevented by proper construction, extension, or maintenance of said work by the railroad."

The jury returned a verdict in favor of the defendants for $500, and they appealed.

Appellants contend that the appellee has no right to condemn or appropriate property in this state, because it was originally formed under the laws of the state of Missouri. Are they correct?

Unless prohibited by its constitution, one state may adopt a corporation of another state, and constitute it its own. *Railroad Co.* v. *Harris,* 12 Wall., 65; *Ohio etc., R. Co.* v. *Wheeler,* 1 Black (U. S.), 286, 293, 297; *Railroad Co.* v. *Vance,* 96 U. S. 450, 457; *Memphis, etc., R. Co.* v. *Alabama,* 107 U. S. 581; *Clark* v. *Barnard,* 108 U. S. 436; *Pennsylvania R. Co.* v. *St. Louis, etc., R. Co.* 118

U. S. 290; *Graham* v. *Railroad Co.* 118 U. S. 161; *Goodlett* v.
*Louisville, etc., R. Co.,* 122 U. S. 391. In order to do so, "the
language used must imply creation or adoption in such form as to
confer the power usually exercised over corporations by the state,
or by the legislature, and such allegiance as a state corporation
owes to its creator. The mere grant of privileges or powers to it as
an existing corporation, without more, does not do this." *Pennsyl-*
*vania Railroad* v. *St. Louis, Alton & Terre Haute Railroad,* 118
U. S. 290, 296; *Goodlett* v. *Louisville & Nashville Railroad,* 122
U. S. 391, 405, 408; *St. Louis & San Francisco Railway* v. *James,*
161 U. S. 545, 561.

The constitution of this state ordains that corporations may be
formed under general laws. And section 2 of an act approved
March 13, 1889 (Acts 1889, p. 43, c. 34), which is entitled "An
act relating to the consolidation of railroad companies, and the
purchasing, leasing and operating railroads, and to repeal sec-
tions 1, 2, 3, 4 and 5 of an act entitled 'An act to prohibit foreign
corporations from operating railroads in this state', approved March
22, 1887, so far as is applicable to this case, is as follows: 'Any
railroad company existing under the laws of any other state or ter-
ritory may extend and construct its railroad into this state; * * *
provided, * * * that before any railroad corporation of any
other state or territory shall be permitted to avail itself of the
benefits of this act, or any part thereof, such corporation shall file
with the secretary of state of this state a certified copy of its arti-
cles of incorporation, if incorporated under a general law of such
state or territory, or a certified copy of the statute laws of such
state or territory incorporating such company, where the charter of
such railroad corporation was granted by special statute of such
state, and upon the filing of such articles of incorporation or such
charter, with a map and profile of the proposed line, and paying
the fees prescribed by law for railroad charters, such railroad com-
pany shall, to all intents and purposes, become a railroad corpora-
tion of this state, subject to all of the laws of the state now in
force or hereafter enacted, the same as if formally incorporated in
this state, anything in its articles of incorporation or charter to
the contrary notwithstanding, and such acts on the part of such
corporation shall be conclusive evidence of the intent of such
corporation to create and become a domestic corporation."

Upon a compliance with the act of 1889 a railroad corporation
of another state becomes a corporation of this state, with all its

rights and powers, and subject to all its duties and obligations. But appellant says that the act further provides:

"That every railroad corporation of any other state which has heretofore leased or purchased any railroad in this state shall, within sixty days from the passage of this act, file a duly certified copy of its articles of incorporation or charter with the secretary of state of this state, and shall thereupon become a corporation of this state, anything in its articles of incorporation or charter to the contrary notwithstanding, and in all suits or proceedings instituted against any such corporation process may be served upon the agent or agents of such corporation or corporations in this state in the same manner that process is authorized by law to be served upon the agents of railroad corporations in this state organized and existing under the laws of this state"; and suggest that the last clause, providing how process may be served, indicates that it was not the intention of the act to make foreign corporations that comply with it the same as those originally incorporated under the laws of this state. But this suggestion is not correct. The last proviso seems to apply only to railroad corporations which leased or purchased any railroad in this state before the passage of the act. The clause referred to is not in conflict with what precedes, but is a useless repetition of what is already said in other words; and is a further evidence of the fact that the intention of the act was to fully and completely make corporations complying with it domestic corporations. It can not be a limitation of the effects of the act; for, if it be such, the only effect of the act would be to provide that the railroad corporations complying with it may be served with process in the same manner domestic corporations can be served—a most unreasonable construction of the act.

Appellants contend that the act does not empower a railroad corporation of another state, which has complied with it, to condemn or appropriate private property, because the constitution of this state declares that foreign corporations shall not have such power. But the act did not and does not undertake to do so, for it expressly provides "that, before any railroad corporation of any other state or territory shall be permitted to avail itself of "its benefits, or any part thereof," it shall become a corporation of this state—a domestic corporation.

Appellants admit that appellee has complied with the act of 1889, but insist that it did not thereby become a corporation vested with all the rights and powers of a corporation of this state, and

cite *St. Louis & San Francisco Railway Company* v. *James,* 161 U. S. 545, to support their contention.   In that case Etta James, a citizen of the state of Missouri, brought an action in the United States circuit court in this state against the St. Louis & San Francisco Railway Company for damages caused by the negligent killing of her husband at Monette, in Missouri.   The defendant was originally created a corporation of Missouri, and afterwards became a corporation of this state by complying with the act of 1889. It contended that the court had no jurisdiction on the ground that the defendant corporation was not a citizen of Arkansas, but was a citizen of Missouri, of which state the plaintiff was a resident and citizen.   The supreme court of the United States held that the defendant, as a Missouri corporation, by compliance with the act of 1889, did not become a corporation of this state in such a sense as to make it a citizen of this state so as to subject it to a suit or action in the United States circuit court in Arkansas by a citizen of the state of its origin.   This decision was based upon the theory that, where the jurisdiction of a federal court in an action in which a corporation is a party depends upon the citizenship of the parties, the citizenship of the corporation is determined by that of its members; and that "there is an indisputable legal presumption that a state corporation, when sued or suing in a circuit court of the United States, is composed of citizens of the state which created it;" and hence the corporation is a citizen of that state, and is "deemed to come within that provision of the constitution of the United States which confers jurisdiction upon the federal court in controversies between citizens of different states."   The court in that case did not hold that the defendant was not a corporation of this state; but, on the contrary, has often held "that a corporation of one state may be made a corporation of another state by the legislature of that state in regard to the property and acts within its territorial jurisdiction."   *Ohio & Mississippi Railroad Company* v. *Wheeler,* 1 Black, 286, 287; *Railroad Co.* v. *Harris,* 12 Wall., 65, 82; *Railway Co.* v. *Whitton,* 13 Wall., 270, 283; *Railroad Co.* v. *Vance,* 96 U. S. 450, 457; *Memphis & Charleston Railroad* v. *Alabama,* 107 U. S. 581; *Clark* v. *Barnard,* 108 U. S. 436, 451, 452; *Stone* v. *Farmers' Loan & Trust Co.,* 116 U. S. 307, 334; *Graham* v. *Boston, Hartford & Erie Railroad,* 118 U. S. 161, 169; *Martin* v. *Baltimore & Ohio Railroad,* 151 U. S. 673, 677; *Louisville, etc., Ry. Co.* v. *Louisville Trust Co.,* 174 U. S. 552, 562.

The decision in *St. Louis & San Francisco Railway Company* v. *James, supra,* did not affect the question in the case at bar. The supreme court of the United States virtually .so held in *Louisville, New Albany & Chicago Ry. Co.* v. *Louisville Trust Co.,* 174 U. S. 502, in which the question decided in *St. Louis & San Francisco Railway Company* v. *James* arose. In that case "a corporation created in Indiana brought an action in the federal court in Kentucky against several Kentucky corporations. There was a plea to the jurisdiction, asserting that the plaintiff was a corporation and citizen of Kentucky, of .which state the defendants were corporations. There was a contest as to whether the Indiana corporation had accepted the provisions of a Kentucky statute, which it was alleged constituted it a corporation of Kentucky. The supreme court, on the question of jurisdiction, said: "The acts done by the Louisville, New Albany & Chicago Railway Company, under the statutes of Kentucky, while affording ample evidence that it had accepted the grants thereby made, can hardly affect the question whether the terms of those statutes were sufficient to make the company a corporation of Kentucky. But a decision of the question whether the plaintiff was or was not a corporation of Kentucky does not appear to this court to be required for the disposition of this case, either as to the jurisdiction, or as to the merits. As to the jurisdiction, it being clear that the plaintiff was first created a corporation of the state of Indiana, even if it was afterwards created a corporation of the state of Kentucky also, it was and remained, for the purposes of the jurisdiction of the United States, a citizen of Indiana, the state by which it was originally created."

The instruction numbered 5 given to the jury by the court at the request of the appellee should not have been given. In that instruction the court told the jury not to award appellants any damage because they may believe from the evidence that damage will hereafter accrue to the appellants from the work done on Red river as it now exists, but which may be prevented by the proper construction, extension or maintenance of said work. That instruction was misleading and prejudicial, because it was calculated to induce the jury to believe that they should award no damage on account of the present market value of appellants' farm being impaired by reason of the injury that appellee's work will probably cause in the future. Why should they, if such injury was to be prevented by the proper construction, extension, or maintenance of said

work? This defect was not cured by the instruction numbered 3 given at the request of appellant, as contended by appellee.

Reverse and remand for a new trial.

HUGHES, J., dissents.