CHICAGO, R. I. & P. RY. CO. v. LUDWIG, Secretary of State of Arkansas.

(Circuit Court, E. D. Arkansas, W. D.    October 5, 1907.)

No. 1,600.

1. COURTS—JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE.

A suit to enjoin a state officer from taking action to forfeit the franchise rights of a corporation under a statute alleged to be in violation of the Constitution of the United States is not one against the state within the meaning of the eleventh constitutional amendment, and is within the jurisdiction of a federal court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 844, 844½.

Federal jurisdiction of suits against state, see note to 13 C. C. A. 165].

**2.** CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—FOREIGN CORPORATIONS —RIGHT OF STATE TO EXCLUDE.

While a state which has admitted a foreign corporation to the right to do business therein has the power to withdraw such permission at pleasure, the exercise of such power is subject to the limitation that, where the corporation has been granted a franchise in the nature of a contract, it is protected from impairment by the contract clause of the national Constitution.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 372–413.]

**3.** SAME.

A foreign railroad corporation which acquired valuable railroad property in Arkansas, and by compliance with Act Ark. March 13, 1889 (Laws 1889, p. 43; Kirby's Dig. §§ 6743–6748), became under said act and section 11, art. 2, of the state Constitution, "to all intents and purposes a railroad corporation of this state, subject to all of the laws of the state now in force or hereafter enacted the same as if formally incorporated in this state," acquired thereby the contract right to be subjected by the state to only such treatment and liabilities as domestic railroad corporations, and such right is unconstitutionally impaired by the provision of Act Ark. May 13, 1907, which subjects it to a forfeiture of all its franchise and charter rights to do business in the state and to ouster therefrom in case it shall remove any action or suit into a federal court without the consent of the adverse party, or institute a suit in such court against a citizen of the state; no such restriction being placed on domestic railroad corporations.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 372–413.]

In Equity. Suit for injunction. On demurrer to bill.

The bill charges: That complainant is a railway corporation created by and existing under the laws of the states of Iowa and Illinois, engaged in operating lines of railroad and conducting a business as a common carrier in and through the states of Illinois, Iowa, Minnesota, South Dakota, Nebraska, Colorado, Missouri, Kansas, Tennessee, Arkansas, Louisiana, and Oklahoma and Indian Territories. That on May 24, 1904, it filed a certified copy of its articles of incorporation with the Secretary of State of the state of Arkansas, paid the fees prescribed by law, and otherwise complied with all the laws of the state of Arkansas regulating the terms and conditions upon which railroad companies organized and existing under the laws of states or a territory other than the state of Arkansas are permitted to do business in that state, and thereby it became a domestic corporation of said state. That its business is interstate as well as intrastate. That, for the purpose of conducting its business in this state as authorized by its laws, it leased for a valuable consideration for a term of 999 years all of the rights, privileges, franchises, and other property of the Choctaw, Oklahoma & Gulf Railway Company, a corporation organized under an act of Congress, and owned and operated railroads through the state. That complainant now owns, leases, and operates 604.13 miles of railroad, right of way, depots, station grounds, shops, warehouses, rolling stock, etc., assessed for taxes in the state of Arkansas by the authorities of said state at $6,912,482.00. That now the defendant, as Secretary of State, notwithstanding the aforesaid premises, threatens to forfeit complainant's right to conduct its business as a railroad company in his state by authority, as he claims, of an act of the Legislature of the state of Arkansas, approved May 13, 1907, for the reason that the complainant removed a cause instituted against it by a citizen of this state in one of the courts of the state to the United States court of the Eastern District of Arkansas. The bill then attacks the constitutionality of the act, in so far as it applies to it upon several grounds which it is unnecessary to set out, the principle grounds, which, in the view of the court, determine this case and also the other cases submitted at the same time, being that its effect is to impair the obligations of

a contract in violation of section 10, art. 1, and section 1 of the fourteenth amendment to the Constitution of the United States.

It is also charged that complainant conducts its business upon as economical a basis as it is safe and practicable to operate lines of railroad; that, to enable it to safely maintain and operate its railroad, it is necessary that it receive the revenues occasioned from handling of freight and passengers from points within the State of Arkansas; that, if it is denied the right to handle such intrastate traffic and receive such revenue, the receipts derived from handling of interstate traffic alone will not enable it to continue to pay the necessary expenses of maintenance and operation and handling of such interstate traffic and pay a fair return upon its investment.

The prayer of the bill is for an injunction to prevent the defendant from revoking the charter or its right to carry on business in this state. The defendant demurs upon the grounds, first, that this is in effect an action against the state, and, therefore, not cognizable in a court of the United States, as provided in the eleventh amendment to the Constitution of the United States; and, second, that there is no equity in the bill. The provisions of the Constitution and the various acts of the Legislature of the state of Arkansas which it is necessary to consider in the determination of the issues involved are as follows:

Section 11, art. 12, of the Constitution provides:

"Foreign corporations may be authorized to do business in this state under such limitations and restrictions as may be prescribed by law. Provided, that no such corporation shall do any business in this state except while it maintains therein one or more known places of business and an authorized agent or agents in the same upon whom process may be served; and, as to contracts made or business done in this state, they shall be subject to the same regulations, limitations and liabilities as like corporations of this state, and shall exercise no other or greater powers, privileges or franchises than may be exercised by like corporations of this state, nor shall they have power to condemn or appropriate private property."

Section 2 of the acts of the General Assembly of the state of Arkansas, approved March 13, 1889 (Laws 1889, p. 43), and digested as sections 6743 to 6748 (Kirby's Dig.), inclusive, is as follows:

"Any railroad company in this state, existing under general or special laws, may sell or lease its road, property and franchises to any other railroad company duly organized and existing under the laws of any other state or territory, whose line of railroad shall so connect with the leased or purchased road by bridge, ferry or otherwise, as to practically form a continuous line of railroad, and any railroad company in this state existing under general or special laws, may buy or lease, or otherwise acquire, any railroad or railroads, with all the property, rights, privileges and franchises thereto pertaining, or buy the stock and bonds, or guarantee the bonds of any railroad company or companies incorporated or organized within or without this state whenever the roads of such companies shall form in the operation thereof of a continuous line or lines. Provided, that before any such lease or sale is valid, it must be approved and ratified by persons holding or representing two-thirds of the capital stock of each of such companies respectively, at a stockholders' meeting called for that purpose; and any railroad company existing under the general or special laws of any other state or territory may buy or lease, or otherwise acquire, any railroad or railroads, the whole or part of which is in this state, with all the rights, privileges and franchises thereto pertaining, or buy the stock and bonds, or guarantee the bonds of any railroad company incorporated or organized under the laws of this state, whenever the roads of such companies shall form in the operation thereof a continuous line or lines. Provided, that the road so purchased shall not be parallel or competing with the purchasing road; and any railroad company existing under the laws of any other state or territory may extend and construct its railroad into or through this state. Provided, further, that any agreement of any company existing under the general or special laws of this state, or of any other state or territory, to lease or buy a railroad and appurtenances, or to buy the stock or bonds, or guarantee the bonds of any railroad company incorporated and organized within this state, heretofore executed by the proper officers of such

companies and ratified by the companies parties thereto, by the assent of persons holding two-thirds of the capital stock in each of such companies, expressed at a meeting of such stockholders called for that purpose, shall be taken and held to be binding from the date of its execution. Provided, further, that nothing in the foregoing provisions shall be held or construed as curtailing the right of state or counties through which said consolidated, leased or purchased road or roads may be located, to levy and collect taxes upon the same and the rolling stock thereof, pro rata, in conformity with the provisions of the laws of this state upon that subject. Provided, further, that before any railroad corporation of any other state or territory shall be permitted to avail itself of the benefits of this act, or any part thereof, such corporation shall file with the Secretary of State of this state, a certified copy of its articles of incorporation, if incorporated under a general law of such state or territory or a certified copy of the statute laws of such state or territory incorporating such company, where the charter of such railroad corporation was granted by special statute of such state; and upon the filing of such articles of incorporation or such charter, with a map and profile of the proposed line and paying the fees prescribed by law for railroad charters, such railroad company shall, to all intents and purposes, become a railroad corporation of this state, subject to all of the laws of the state now in force or hereafter enacted, the same as if formally incorporated in this state, anything in its articles of incorporation or charter to the contrary notwithstanding, and such acts on the part of such corporation shall be conclusive evidence of the intent of such corporation to create and become a domestic corporation, and, provided further, that every railroad corporation of any other state which has heretofore leased or purchased any railroad in this state, shall, within sixty days from the passage of this act, file a duly certified copy of its articles of incorporation or charter with the Secretary of State of this state, and shall, thereupon, become a corporation of this state, anything in its articles of incorporation or charter to the contrary notwithstanding, and in all suits or proceedings instituted against any such corporation, process may be served upon the agent or agents of such corporation or corporations in this state, in the same manner that process is authorized by law to be served upon the agents of railroad corporations in this state, organized and existing under the laws of this state."

Acts of May 23, 1901, digested as sections 6749 and 6750 of Kirby's Digest is as follows:

"The franchise and all charter rights whatsoever of any railroad company in and to all railroad, roadbed, bridge, depot, or other railroad property, as well as the possession of, and right to operate same, which may have been acquired by such railroad under and by virtue of any lease, shall be forfeited and such railroad company ousted of its right thereunder to operate, possess or control the same, if such lease shall not have been made in conformity with the statute governing the making of such leases, or if such lessee shall fail to maintain said property in good repair so as to afford safe and reasonably prompt facilities of travel to the public, or shall fail to furnish reasonable shipping accommodations for freight to its patrons.

"This act may be enforced at the instance of the state by her Attorney General, by information in the nature of quo warranto, or other proper suit in any court having jurisdiction."

The act of May 13, 1907, under which it is now claimed the defendant is about to revoke complainant's franchise, is as follows:

"Section 1. Every company or corporation incorporated under the laws of any other state, territory, or country, including foreign railroad and foreign fire and life insurance companies, now or hereafter doing business in this state, shall file in the office of the Secretary of State of this state a copy of its charter or articles of incorporation or association, or a copy of its certificate of incorporation, duly authenticated and certified by the proper authority, together with a statement of its assets and liabilities and the amount of its capital employed in this state, and shall also designate its general office or place of business in this state, and shall name an agent upon whom process may be served. Provided before authority is granted to any foreign

corporation to do business in this state, it must file with the Secretary of State a resolution adopted by its board of directors, consenting that service of process upon any agent of such company in this state, or upon the Secretary of State of this state, in any action brought or pending in this state, shall be a valid service upon said company; and if process is served upon the Secretary of State it shall be his duty to at once send it by mail, addressed to the company at its principal office; and if any company shall, without the consent of the other party to any suit or proceeding brought by or against it in any court of this state, remove said suit or proceeding to any federal court, or shall institute any suit or proceeding against any citizen of this state in any federal court, it shall be the duty of the Secretary of State to forthwith revoke all authority to such company and its agents to do business in this state, and to publish such revocation in some newspaper of general circulation published in this state; and if such corporation shall thereafter continue to do business in this state, it shall be subject to the penalty of this act for each day it shall continue to do business in this state after such revocation.

"Sec. 2. Any foreign corporation, which shall fail to comply with the provisions of this act, and shall do any business in this state, shall be subject to a fine of not less than $1,000, to be recovered before any court of competent jurisdiction and all such fines so recovered shall be paid into the general revenue fund of the county in which the cause of action shall accrue, and it is hereby made the duty of the prosecuting attorneys to institute said suits in the name of the state, for the use and benefit of the county in which the suit is brought, and such prosecuting attorney shall receive as his compensation one-fourth of the amount recovered, and as an additional penalty, any foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid, cannot make any contract in this state which can be enforced by it either in law or in equity, and the complying with the provisions of this act after suit is instituted shall in no way validate said contract.

"Sec. 3. That all corporations hereafter incorporated in this state and all foreign corporations seeking to do business in this state shall pay into the treasury of this state for the filing of said articles a fee of $25.00 where the capital stock is $50,000.00 or under; $75.00 where the capital stock is over $50,000.00 and not more than $100,000.00; and $25.00 additional for each $1,000,000.00 of capital stock."

Buzbee & Hicks and W. F. Evans, for complainant.
W. F. Kirby, Atty. Gen. of Arkansas, for defendant.

TRIEBER, District Judge. 1. In Western Union Telegraph Co. v. Andrews, 154 Fed. 95, this court had occasion to pass upon the jurisdiction of national courts in actions against officers of the state, and determine when such an action is in effect a suit against the state within the meaning of the eleventh amendment to the Constitution. In that case the court reviewed the authorities quite fully, and it would serve no useful purpose to repeat them in this opinion. Among the conclusions there reached, and which the court adheres to now, are the following:

"(c) The exemption of the state from judicial process does not protect its officers and agents from being personally liable to an action of tort by a private person whose rights or property they have wrongfully invaded or injured, even by authority of the state, and, when the remedy at law is inadequate, its officers may be restrained by injunction from doing positive acts for which they would be personally liable for taking or injuring plaintiff's property in violation of the Constitution or laws of the United States."

"(e) The fact that the state has a governmental interest in the welfare of its citizens in compelling obedience to the legal orders of its officials for the benefit of the public at large is not that which makes the state as the organized political community a party in interest to the litigation. The interest must

be one in the state as an artificial person, as distinguished from that of a government for the benefit of its citizens."

"(g) That an action to prevent the enforcement of a tariff which is unreasonable and confiscatory, and which is to be enforced by a commission or other officials who are merely acting as administrative agents for the state, is not one against the state, if the act itself is unconstitutional and void as against the complainant."

A franchise to a railroad company to own and operate a railway is a valuable right, and has always been held to be property. Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629, and numerous cases cited and followed with approval collected in 1 Roses' Notes on U. S. Reports, 914.

An interesting case showing that such a franchise is property of which a corporation cannot be deprived without compensation, even under the power of eminent domain, is Monongahela Navigation Co. v. United States, 148 U. S. 312–329, 13 Sup. Ct. 622, 627, 37 L. Ed. 463, where the court said, in speaking of such franchise:

"The latter [meaning the franchise] can no more be taken without compensation than can its tangible corporeal property."

Upon the allegations of the bill, which for the purpose of determining the demurrer are confessed to be true, this is not an action against the state within the meaning of the eleventh amendment.

2. That the state has the power to prevent a foreign corporation from doing business at all within its boundaries unless such prohibition is so conditioned as to violate the federal or its own Constitution has been finally determined in Security Mutual Life Ins. Co. v. Prewitt, 202 U. S. 246, 26 Sup. Ct. 619, 50 L. Ed. 1013, and is now no longer open to question. As stated in the opinion of the court:

"As a state has the power to refuse permission to a foreign insurance company to do business at all within its confines, and as it has the power to withdraw that permission when once given, without stating any reason for its action, the fact that it may give what some may think a poor reason or none for a valid act is immaterial."

But, on the other hand, it is equally well settled that if the state has induced a corporation to enter it by the granting of a franchise, which is in the nature of a contract, then it is protected in the enjoyment thereof by article 1, § 10, of the national Constitution, prohibiting any state from passing any law impairing the obligations of a contract. Without citing the numerous authorities on that subject, it is sufficient to refer to the American Smelting Co. v. Colorado, 204 U. S. 103, 27 Sup. Ct. 198, 51 L. Ed. 393, decided at the last term of the court. Therefore the only thing now left for determination in this case is what acts of a state constitute a contract with a foreign corporation to do business in the state. The statutes of Colorado construed in that case are not quite as strong as those of this state; for, while that statute provided that "such corporations [foreign corporations permitted to do business in the state] should be subject to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this state, and shall have no other or greater powers" (section 499, Mills' Ann. St. Colo.) the Constitution of this state contains a similar provision (article 12, §

11, supra), and, in addition thereto, the statute regulating the right of foreign railroad corporations to do business in this state provides:

"And upon the filing of such articles of incorporation or such charter, etc., * * * such railroad company shall to all intents and purposes become a railroad corporation of this state, subject to all the laws of the state now in force or hereafter enacted, the same as if formally incorporated in this state," etc.   Act March 13, 1889, p. 44, c. 34, § 2.

That these provisions clearly entitle a foreign corporation complying therewith to all rights and privileges of a domestic corporation can hardly be doubted in view of what was decided in the American Smelting Co. Case; but, were there any room for doubt on that subject, it has been removed by the decision of the Supreme Court of the state of Arkansas when construing the effect of that act.   As will be noticed by reference to the constitutional provision of the state set out in the statement of facts, the power "to condemn or appropriate private property" was expressly excluded, but the Supreme Court in Russell v. St. L. & S. W. R. R. Co., 71 Ark. 451, 75 S. W. 725, expressly held that under the statute in question a foreign railroad corporation complying with the terms of the act (as is charged in this bill to have been done by complainant) became a domestic corporation of this state "with all its rights and powers, subject to all its duties and obligations," including the right of eminent domain.   The fact that a corporation for jurisdictional purposes in the courts of the United States was still held to be a foreign corporation, as was decided by the Supreme Court in St. L. & S. F. R. R. Co. v. James, 161 U. S. 545, 16 Sup. Ct. 621, 40 L. Ed. 802, was held not to affect that question; the court distinguishing that case from the one before it.   This was reaffirmed by that court in St. L. & S. F. Ry. v. Hale, 100 S. W. 1148, decided March 18, 1907.   Since the rendition of the opinion in the American Smelting Co. Case, the identical question came before the Supreme Court of South Carolina in British-American Mortgage Co. v. Jones, 56 S. E. 983, and that court, following the decision of the Supreme Court of the United States, held that:

"Where a foreign corporation paid the license fee required by the act of 1893 to enable it to do business in the state, it cannot be required by the act of 1904 to pay an additional tax not levied on domestic corporations; such a requirement being an impairment of the contract of admission to do business in the state on the same terms as domestic corporations."

But, assuming that such foreign corporation when entering the state in pursuance to the laws of Arkansas has not become a domestic one, it must still be held that the decision of the Supreme Court in the Prewitt Case is limited by the proviso that the revocation of the right of a foreign corporation to do business in a state other than that of its creation must not in any way impair the obligations of a contract entered into by the state with a foreign corporation.   The learned Attorney General of the state appearing for the defendant frankly admitted that the decision of the Supreme Court of the United States on questions of this nature involving a right claimed under a provision of the Constitution of the United States is conclusive, not only on this, but also all other courts, including the Supreme Court of the State.   But he insists, and very ingeniously argues, that:

"If the foreign corporation became entitled to all the rights and privileges of a domestic corporation of like nature, as the Constitution of this state also provides that 'it shall exercise no other regular powers, privileges or franchises than may be exercised by a like corporation of this state,' it is subject to section 6 of article 12 of that instrument, which provides that the General Assembly shall have the power to alter, revoke, or annul any charter of incorporation now existing and revocable at the adoption of this constitution, or that may hereafter be created whenever in their opinion it may be injurious to the citizens of this state, in such manner, however, that no injustice shall be done to the corporators, and therefore," he proceeds to argue, "the Legislature has the right to revoke their charter or right to do business in this state as a foreign corporation, without stating any reason for its action, or what it may think a proper reason."

Assuming, without deciding, that this provision giving to the Legislature the right to amend, revoke, or annul any charters granted by it applies to foreign corporations as well as domestic corporations, and also assuming that the courts are powerless to inquire as to its reasons, the determination by the Legislature being conclusive, still this provision must be taken in connection with the constitutional provision prohibiting the impairment of the obligations of a contract, as the national Constitution provides that:

"This Constitution and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made under the authority of the United States shall be the supreme law of the land and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

When the corporation entered the state by authority of its laws, it was not, in the language of the court in the Smelting Company Case, "a mere license to come into the state and do business therein upon payment of a sum named, liable to be revoked or the sum increased at the pleasure of the state, without further limitation. It was a clear contract that the liability, etc., shall be the same as the domestic corporations and the same treatment shall be measured out to both." Such being the case, did the power retained by the state to alter, revoke, or amend any charter of a corporation, with the proviso "that no injustice shall be done to the corporators," authorize the impairment of the obligations of a contract?

It is urged that, when the corporation came into the state, it knew that its charter could be revoked, as the constitutional provision was as much a part of the statute authorizing it to enter the state as if included therein. The framers of the Constitution, composed as it was of some of the ablest lawyers of the state of Arkansas, were, of course, familiar with the provisions of the Constitution of the United States, and no doubt knew that to retain the power to revoke it absolutely, regardless of any contract rights of the parties might be in violation of that instrument prohibiting the states from enacting laws impairing the obligations of contracts, and for this reason added the proviso: "In such manner, however, that no injustice shall be done to the corporators." The effect of such a constitutional proviso was passed upon in Vicksburg v. Waterworks Co., 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102, distinguishing Hamilton Gas, etc., Co. v. Hamilton, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963. But, even if it be assumed that the proviso has not that effect, still it cannot in any way affect the

determination of this cause. The contract between the foreign corporation and the state, as declared in the American Smelting Company Case, was "a clear contract that the liabilities," etc., should be the same as the domestic corporations, and the same treatment should be measured out to both. If it was desired to increase the liabilities of the foreign corporation, it could only be done by increasing those of the domestic corporation at the same time and to the same extent.

That the act of 1907 deprived foreign corporations then doing business in the state under the acts in force prior thereto of valuable rights and privileges, and imposed on them onerous liabilities of which domestic corporations are not deprived nor have imposed on them, is too clear to require argument. Section 1 of the act deprives them of the right, without the consent of the other party, to remove any suit or proceeding brought by any one against it in any court of the state to any federal court, or to institute any original suit or proceeding against any citizens of this state in any federal court, and as a penalty it forfeits its right to do business in the state. Corporations organized under the laws of the state are not deprived of this privilege or right. They may institute proceedings in the federal courts originally or remove such a cause, if, under the acts of Congress, there is authority to do so. This is a valuable right conferred by Congress in pursuance of the authority of the Constitution of the United States of which the states cannot deprive a citizen or corporation. Insurance Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365; Barron v. Burnside, 121 U. S. 186, 7 Sup. Ct. 931, 30 L. Ed. 915; Sou. Pac. Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942; Martin v. Railroad Co., 151 U. S. 673, 14 Sup. Ct. 533, 38 L. Ed. 311; Barrow Steamship Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964. Section 3 of the act requires all foreign corporations, although they have complied with the laws of the state when they entered the state, to pay again heavy incorporating fees, while domestic corporations chartered before the passage of the act are not subject to this burden.

It is impossible to distinguish this case from American Smelting Co. v. Colorado; and, for this reason, the demurrer to the bill must be overruled.