SOUTHWESTERN GAS & ELECTRIC COMPANY *v.* PATTERSON ORCHARD COMPANY.

Opinion delivered October 14, 1929.

*Abe Collins* and *Arnold & Arnold,* for appellant.

*Lake, Lake & Carlton,* for appellee.

McHANEY, J. The principal facts involved in this controversy, as well as the history of this litigation, are well stated in the recent case of *Patterson Orchard Co.* v. *Southwest Arkansas Utilities Corporation,* 179 Ark. 1029, 18 S. W. (2d) 1028, and we will not repeat them here, except as may be necessary to a proper understanding of the issues here decided.

Appellant, Southwestern Gas & Electric Company, is a foreign corporation, but for some years has been doing business in this State in compliance with all laws regulating the admission of foreign corporations into this State. It is engaged in the business of supplying electricity to consumers, owning, constructing and operating high tension lines and distributing systems. In the construction of one of its high tension lines, it sought a thirty-foot right-of-way over and across the orchard lands of appellee, which it was unable to obtain by negotiation. It thereupon, on March 17, 1928, filed with the clerk of the circuit court of Sevier County its petition to condemn said right-of-way, and thereafter, on the same day, presented same to the circuit judge, and obtained an order directing a deposit with the clerk of a, certain sum of money, and giving authority to enter upon said land and construct its lines. No notice was given appellee of this application. On March 20, on application of appellee, the judge made another order holding in abeyance his first order, which was served on appellants at a time when

the line was practically completed across the orchard. This second order was made by the judge for the reason that the Southwestern Company is a foreign corporation, and not authorized under the Constitution to condemn property. The Southwest Arkansas Utilities Corporation was then organized, and brought its action in the circuit court to condemn the same right-of-way across the orchard. On motion of appellee the cause was transferred to the chancery court, which proceeded to decree in plaintiff's favor, conditioned as follows: "Conditioned, however, upon the payment to the defendant by the plaintiff * * * one thousand dollars, covering all damages sustained by the defendant on account of the taking of said right-of-way by the plaintiff," etc.

The defendant in that action is the appellee here. That decree was affirmed by this court on July 8, 1929, as above stated, both on the appeal and cross-appeal, appellee contending in that case that the damages assessed were excessive.

In the original action by appellant, the Southwestern Company, appellee filed an answer and cross-complaint, alleging that said appellant had no authority to condemn its property, and that it had been damaged on account of the wrongful entry upon its lands in the sum of $500 actual damages and $5,000 punitive damages. On a trial to a jury there was a verdict and a judgment in favor of appellee for $700.

The Southwestern Company will be hereafter referred to as appellant, although there are several other appellants against whom the judgment was obtained.

The first question presented is whether a foreign corporation, having complied with our foreign corporation laws, may condemn private property. Section 11 of article 12 of the Constitution of this State reads as follows:

"Foreign corporations may be authorized to do business in this State under such limitations and restrictions as may be prescribed by law. Provided, that no such corporation shall do any business in this State except while it maintains therein one or more known places of busi-

ness, and an authorized agent or agents in the same upon whom process may be served; and, as to the contracts made or business done in this State, they shall be subject to the same regulations, limitations and liabilities as like corporations of this State, and shall exercise no other or greater powers, privileges or franchises than may be exercised by like corporations of this State, nor shall they have power to condemn or appropriate private property."

The Legislature of this State has never undertaken to extend the power of eminent domain to foreign corporations. By an act approved March 22, 1887, act No. 80, p. 110, entitled, "An act to prohibit foreign corporations from operating railroads in this State," it was made unlawful for any citizen or corporation of another State to "build, lease, own, maintain or operate a railroad within this State," and all such persons or corporations were required to organize domestic corporations for this purpose. By act 34, Acts of 1889, p. 42, certain sections of the act of 1887 were repealed, and other sections added which provided, among other things, that when a foreign railroad company complied with the law by filing with the Secretary of State a certified copy of its articles of incorporation or charter, it thereby "became a corporation of this State, anything in its articles of incorporation or charter to the contrary notwithstanding."

In *Russell* v. *St. L. S. W. Ry. Co.*, 71 Ark. 451, 75 S. W. 725, this court held that: "Upon a compliance with the act of 1889 a railroad corporation of another State becomes a corporation of this State, with all its rights and powers, and subject to all its duties and obligations," including the power or right of eminent domain. The opinion in that case is based upon the language of the act of 1889, which provides that, upon doing the things heretofore stated, a foreign corporation becomes a domestic corporation. This statute stood unamended and unchanged as § 8424, C. & M. Digest, until 1925, when, by act 254, Acts 1925, p. 745, it was amended to include pipe lines, but not power lines.

Of course, by complying with said statute, the foreign corporation does not surrender its identity as a foreign corporation, but continues for jurisdictional purposes to be a corporation of the State of its creation, and may remove proper cases to the Federal courts. It is, however, domesticated in this State, and, to all intents and purposes, in connection with its business in this State, is a corporation of this State. It becomes the adopted child of this State. But not so as to all other foreign corporations. Nowhere do we find in our foreign corporation laws any language that makes them corporations of this State. Upon compliance with our laws they are given all the powers of domestic corporations, except such as are prohibited by the Constitution. The power of eminent domain is expressly extended to traction, light and power companies organized in this State by § 4042 *et seq.*, C. & M. Digest, but not to foreign companies, the Legislature evidently considering that it had no power to do so without first requiring them to become domesticated.

The Russell case, *supra*, was cited in *L. & N. W. Rd. Co.* v. *State*, 75 Ark. 435, 88 S. W. 559, 5 Ann. Cas. 637, and on page 441 this language is used: "This court held in *Ru¡ ¡ell* v. *St. L. S. W. Rd. Co.*, 71 Ark. 451, 75 S. W. 725, ¡hat a foreign railroad corporation complying with the ’ ¡ws of this State becomes a domestic corporation, an ¸ capable of exercising eminent domain, which can only be exercised by domestic corporations." We therefore conclude that a foreign corporation, such as appellant, cannot exercise the power of eminent domain because prohibited by the Constitution of this State.

The next question for our determination is, was appellee entitled to recover any damages from appellant, a requested peremptory instruction having been refused it? It contends that appellant was a trespasser on its property; that counsel for appellant obtained the order from the circuit judge permitting it to enter in bad faith; and that fraud was practiced on the judge in procuring the order in that the fact that it is a foreign corporation was concealed from him, the allegation in the petition being

that it was a corporation authorized to do business in this State, without stating that it was a foreign corporation. It is further said that the petition was not filed with the clerk until the 20th, when appellant was ready to enter on the land, and that this is an evidence of bad faith. We do not agree with appellee. Mr. Collins, counsel for appellant, testified quite positively that he did file the petition with the clerk on the 17th, and before the matter was presented to the judge; that he did not know why it showed filed on the 20th; that he gave appellee no notice for the reason the statute does not require it. The clerk says he thinks the petition was handed him a few days before the 20th, the day it was actually marked filed; that he swore Mr. Leighton to the complaint on the 17th, and the complaint or petition was in his office at that time. His memory was uncertain as to what actually happened. This question is only material in determining whether the matter was before the judge. No question of the jurisdiction of the court is raised. The order was obtained by eminent counsel, who, in good faith, tried out the question as to the right of a foreign corporation, such as appellant, to condemn private property, both in the lower court and in this court. The argument made in this court is of such persuasive force that Mr. Justice Kirby and the writer are not entirely satisfied they are not right about it. And, while we are holding that they are wrong in this contention, it does not follow that they are not in good faith in making it. Having obtained the order in good faith, and having constructed the line pursuant to it, appellant could not have been guilty of such a willful and malicious wrong by entering under a void order as to justify a recovery of punitive damages. It in good faith believed it had the right to enter, and there is a total lack of evidence of malice, either express or implied, which is necessary to support a recovery for punitive damages. *Texarkana Gas & Electric L. Co.* v. *Orr,* 59 Ark. 215, 27 S. W. 66, 143 Am. St. Rep. 30; *St. L. I. M. & S. R. Co.* v. *Wilson,* 70 Ark. 136, 66 S. W. 661, 91 Am. St. Rep. 74;

*Ry. Co.* v. *Stroude,* 77 Ark. 109, 91 S. W. 18, 113 Am. St. Rep. 130; *Moore* v. *Wilson, ante* p. 41.

Neither can there be any recovery for actual damages in this case. The decree in the case of *Patterson Orchard Co.* v. *S. W. Ark. Utilities Corp., supra,* specifically recites that the $1,000 paid shall cover "all damages sustained by the defendant (appellant here) on account of the taking of said right-of-way by the plaintiff." There is no showing that appellant did any damage to appellee's property outside of the thirty-foot right-of-way, and only slight damage to it, which was paid for by the Southwest Arkansas Utilities Corporation. The principal damage was the value of the property taken, and that, as well as all other actual damages, was recovered in the former suit. Manifestly appellee is not entitled to recover twice for the same property.

Nor is appellant entitled to recover from appellee the damage done by it in cutting down two of its structures after they were constructed on the land without authority of law. It sold its line in its then condition to the Southwest Arkansas Utilities Corporation, and its right to maintain such action passed to the latter. The court properly refused to submit this question to the jury.

The judgment will be reversed, and the cause dismissed. It is so ordered.

MEHAFFY and BUTLER, JJ., dissent.