# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3871

_____

| | | |
|---|---|---|
| Union Pacific Railroad Company, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| 174 Acres of Land Located in | * | Eastern District of Arkansas. |
| Crittenden County, Arkansas; | * | |
| Letitia M. Haygood; et al., | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: May 14, 1999

Filed: October 13, 1999

_____

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Exercising eminent domain powers conferred by Arkansas law, the Union Pacific Railroad condemned land owned by Letitia M. Haygood in Crittenden County, Arkansas. Haygood appeals the district court's[1] judgment awarding her $372,391 as

_____

[1]The HONORABLE STEPHEN M. REASONER, United States District Judge for the Eastern District of Arkansas.

just compensation. She argues the court lacked diversity jurisdiction because the Union Pacific is a citizen of Arkansas, and the court abused its discretion by excluding a portion of her expert's valuation testimony. We affirm.

## I. Diversity Jurisdiction

The Union Pacific's predecessor filed this diversity action to condemn land adjacent to its right-of-way in Crittenden County. Named as defendants were the land; its record owner, Haygood, who was a citizen of Tennessee; and lessees who were citizens of Arkansas. The federal courts have diversity jurisdiction over civil actions between "citizens of different States." 28 U.S.C. § 1332(a)(1). For diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." § 1332(c)(1). The Union Pacific was incorporated in Delaware and has its principal place of business in Nebraska. Haygood (and other land owners in related cases) nonetheless moved to dismiss, arguing the parties are not diverse. The district court denied that motion. See Missouri Pac. RR. v. 55 Acres of Land, 947 F. Supp. 1301, 1305-08 (E.D. Ark. 1996). On appeal, Haygood argues the court erred because the Arkansas statute permitting the Union Pacific to condemn her land makes the railroad a citizen of Arkansas for diversity purposes. This issue requires us to revisit state laws and United States Supreme Court decisions dating back more than a century.

As railroads expanded across the country, Arkansas and many other States granted them the power of eminent domain to acquire private lands for trackage and other improvements. The Arkansas Constitution provides that foreign corporations have no power "to condemn or appropriate private property." ARK. CONST. art. XII, § 11. To confer eminent domain power on railroads originally incorporated elsewhere, the Arkansas Legislature in 1889 enacted a "domestication" statute, now codified at section 23-3-108 of the Arkansas Code. The statute provides that when a foreign railroad corporation files a certified copy of its articles of incorporation with the

Secretary of State and complies with certain other requirements, it "become[s] a railroad . . . of this state . . . the same as if it was formally incorporated in this state." ARK. CODE ANN. § 23-3-108(a)(2). A foreign railroad corporation complying with this statute acquires the power to condemn private property in Arkansas. See Russell v. St. Louis Southwestern Ry., 75 S.W. 725, 727-28 (Ark. 1903).

For much of the Nineteenth Century, the Supreme Court wrestled with an important issue of federal law, whether a corporation is a citizen of *any* State for diversity jurisdiction purposes. See U.S. CONST. art. III, § 2 (federal judicial power extends to controversies "between Citizens of different States"). The Court initially answered this question in the negative, holding in Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 86 (1809), that a corporation "is certainly not a citizen" and therefore only its individual members, suing in the corporate name, could invoke federal diversity jurisdiction. However, the Court overruled Deveaux in Louisville, Cincinnati & Charleston Railroad v. Letson, 43 U.S. (2 How.) 497, 558 (1844), holding that a corporation "is . . . capable of being treated as a citizen of [its state of incorporation], as much as a natural person." Then, in Marshall v. Baltimore & Ohio Railroad, 57 U.S.(16 How.) 314, 329 (1854), the Court adhered to the result in Letson but altered the analysis, concluding that a corporation draws its citizenship from its incorporators, but they are presumed to be citizens of its State of incorporation.

The issue raised by the intersection of these unrelated legal doctrines is whether a foreign railroad corporation that takes advantage of a State's domestication statute thereby becomes a citizen of the State for diversity jurisdiction purposes. Here, for example, Haygood contends the Union Pacific became a citizen of Arkansas for diversity purposes when it complied with the requirements of section 23-3-108 of the Arkansas Code. Not surprisingly, given the importance of railroads to the nation's economic development, this issue was first considered by the Supreme Court more than one hundred years ago. In St. Louis & San Francisco Railway v. James, 161 U.S. 545 (1896), a Missouri citizen sued a railroad incorporated in Missouri in an Arkansas

-3-

federal court, alleging that, by complying with the predecessor to section 23-3-108, the railroad became a citizen of Arkansas for diversity purposes. The Supreme Court disagreed. The Court acknowledged that the Arkansas statute conferred domestic status on the defendant railroad. However, applying the reasoning of its earlier decision in Marshall, the Court held that the statute did not:

> create an Arkansas corporation out of a foreign corporation in such a sense as to make it a citizen of Arkansas within the meaning of the federal constitution, so as to subject it as such to a suit by a citizen of the state of its origin. . . . [I]t is not pretended in the present case that natural persons, resident in and citizens of Arkansas, were, by the legislation in question, created a corporation . . . . 161 U.S. at 565.

James involved the Arkansas domestication statute. Thus, it is nearly on all fours with this case, but not quite. James held only that the Missouri railroad did not become a citizen of Arkansas so as to create diversity with a citizen of Missouri, the railroad's original State of incorporation. It did not address whether the railroad by domesticating in Arkansas destroyed its former diversity with Arkansas citizens. That question was convincingly answered just three years later in Louisville, New Albany & Chicago Railway v. Louisville Trust Co., 174 U.S. 552, 562-63 (1899). In Louisville Trust, a railroad incorporated in Indiana and domesticated in Kentucky sued Kentucky citizens over a bond dispute. Quoting extensively from James, the Court held that the railroad remained a citizen of Indiana for diversity purposes. Any doubt on the question was put to rest in Southern Railway v. Allison, 190 U.S. 326 (1903), which involved a personal injury suit in a North Carolina state court against a railroad incorporated in Virginia and domesticated in North Carolina. The Supreme Court reversed a state court judgment for the plaintiff, concluding that the railroad should have been permitted to invoke diversity jurisdiction and remove the case to federal court:

> [A] corporation may be made what is termed a domestic corporation . . . of a state in compliance with the legislation thereof . . . .

-4-

It does not thereby become a citizen of the state in which a copy of its charter is filed, so far as to affect the jurisdiction of the Federal courts upon a question of diverse citizenship. 190 U.S. at 337.

In arguing that the Union Pacific is an Arkansas corporation for diversity purposes, Haygood relies almost exclusively on the Arkansas Supreme Court decision in <u>Russell</u>. But the Court in <u>Russell</u> acknowledged that a foreign corporation's status under the Arkansas domestication statute is not the same legal issue as its citizenship for diversity purposes, a distinction the Court again noted in <u>Southwestern Gas & Electric Co. v. Patterson Orchard Co.</u>, 20 S.W.2d 636, 638 (Ark. 1929). Diversity jurisdiction is a question of federal law, and we are bound to follow controlling United States Supreme Court precedents.

In determining whether the Supreme Court's decisions in <u>James</u>, <u>Louisville Trust</u>, and <u>Allison</u> are controlling, we must consider the fact that they predate the amendments to the federal diversity statute in 1958, when Congress for the first time expressly addressed the citizenship of corporations for diversity purposes. <u>See</u> Pub. L. No. 85-554, § 2, 72 Stat. 415 (1958), codified at 28 U.S.C. § 1332(c). Congress defined a corporation's citizenship to include its principal place of business, which had the effect of limiting diversity jurisdiction as defined in prior Supreme Court cases. Section 1332(c) also makes the corporation a citizen of "any State by which it has been incorporated." Does that language effectively overrule the long-standing Supreme Court doctrine that a foreign railroad does not become a citizen of another State merely by complying with that State's domestication statute? We think not. The Supreme Court had long recognized that a corporation can be incorporated in more than one State, and the statutory reference to "any State" simply reflects that possibility. Moreover, the legislative history suggests that Congress did not intend such a dramatic change in the ability of railroads to invoke federal diversity jurisdiction. After citing <u>James</u> for the proposition that a corporation "is deemed a citizen of the State in which

it is incorporated," the Senate Judiciary Committee explained the impact of its principal-place-of-business amendment:

> This will eliminate [diversity jurisdiction for] those corporations doing a local business with a foreign charter but will not eliminate those corporations which do business over a large number of States, *such as the railroads, insurance companies, and other corporations whose businesses are not localized in one particular State*.

S. Rep. No. 85-1830 (1958), reprinted in 1958 U.S.C.C.A.N. 3099, 3101-02 (emphasis added).

The Supreme Court recently acknowledged that its older cases dealing with diversity jurisdiction and artificial entities such as corporations, partnerships, and labor unions "can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations." But the Court nonetheless cautioned that "the policy of accommodating our diversity jurisdiction to the changing realities of commercial organization" is "performed more intelligently by legislation than by interpretation of the statutory word 'citizen.'" Carden v. Arkoma Assoc., 494 U.S. 185, 196-97 (1990); see also United Steelworkers of America v. R. H. Bouligny, Inc., 382 U.S. 145, 147 (1965). Mindful of that caution, we conclude that James, Louisville Trust, and Allison remain controlling precedents. The district court therefore correctly ruled that the Union Pacific is not a citizen of Arkansas for diversity jurisdiction purposes.

## II. The Evidentiary Issue

At the condemnation trial, the parties' experts disagreed on the highest and best use of a portion of the condemned land. Haygood's experts, appraiser Randy Minton and developer Luke Quinn, testified that the highest and best use was residential, even though the land was being used as a cotton farm at the time of the taking. They also

testified that this parcel was worth $5,000-$6,000 per acre, based upon sales of comparable tracts in the area and what Quinn believed a reasonable developer would pay for the property. However, the district court refused to allow Minton to present an alternative income or discounted cash flow approach to valuing the land, under which Minton was prepared to opine that a developer would pay $8,326 per acre for this parcel, based upon his estimate that the developed lots would sell for approximately $25,000 each. On appeal, Haygood argues this evidentiary ruling was reversible error.

Though the court's exclusion of this valuation evidence appears consistent with relevant condemnation precedents,[2] we need not decide the propriety of the court's ruling. "If a trial court wrongly excludes evidence, we will not set aside the judgment unless we are left with no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted." Cochenour v. Cameron Sav. & Loan, F.A., 160 F.3d 1187, 1189 (8th Cir. 1998) (quotation omitted). The district court submitted the case to the jury on a special verdict consisting of four interrogatories. The jury specifically found that the highest and best use of this portion of the land was agricultural, consistent with the testimony of the Union Pacific's experts. This finding formed the basis for the court's compensation judgment. The jury heard but did not credit Minton's testimony that the highest and best use was residential. Thus, his excluded testimony, which concerned a method for valuing the land *if* its highest and best use was residential, would not have changed the jury's verdict.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]See United States v. 158.24 Acres of Land, 696 F.2d 559, 564 (8th Cir. 1982); Arkansas State Highway Comm'n v. Allen, 484 S.W. 2d 331, 332 (Ark. 1972).