PALMER, LIQUIDATOR OF CHICAGO LLOYDS *v.* McDONALD.

4-5558            130 S. W. 2d 728

Opinion delivered July 3, 1939.

664

*Buzbee, Harrison, Buzbee & Wright,* for appellant.
*A. F. House,* for attaching creditors.

*Armstrong, McCadden, Allen, Braden & Goodman* and *John Sherrill,* for D. Canale & Company.

SMITH, J.   The record in this case is singularly free from material conflicts in the testimony, and reflects the following facts.

D. Canale & Company is a Delaware corporation, having its principal place of business in Memphis, Tennessee, and has branches thereof in Newport, Jonesboro and West Memphis, in this state.   It domesticated itself in this state by fully complying with all the requirements of law authorizing foreign corporations to do business in this state.   In connection with its business in this state, the Canale Company maintains at each of the three cities above-named an office and warehouse in which are kept stocks of the goods in which they trade.   The company buys and sells merchandise in this state, and operates a number of trucks wholly within this state, on which the licenses imposed by the laws of this state have been paid.

The Canale Company carried a policy of liability insurance on its trucks operating in this state, which was issued April 14, 1937, by the Chicago Lloyds, an association, and not a corporation, located in Chicago, Illinois, and engaged in writing insurance of various kinds.   That insurance company had been denied permission to enter this state by the Insurance Commissioner of this state, but the commissioner was required to grant this permit under the opinion of this court in the case of *Lloyds America* v. *Harrison, Insurance Commissioner,* 193 Ark. 576, 101 S. W. 2d 438.   Following this decision Chicago Lloyds made application to the Insurance Commissioner for a certificate to transact business on March 3, 1937, and that certificate was issued April 19, 1937, authorizing it to transact business in this state.

On November 1, 1937, while said liability insurance policy was in full effect, a truck owned by the Canale Company, and insured under the terms of the policy, collided with another truck, in which 39 persons were being transported, which collision resulted in killing three persons being transported in the other truck and injuring, more or less seriously, about 30 of the other occupants. Numerous suits for damages arose out of this collision, which occurred in this state, and the liability of Chicago

Lloyds under its policy was recognized and has never been questioned.

McDonald & McDonald, attorneys at law, with offices in Memphis, Tennessee, representing Chicago Lloyds in West Mississippi and in the States of Tennessee and Arkansas, employed M. W. Gannaway, an Arkansas attorney, to represent the insurer. Lawrence A. Gouldman & Company, Inc., insurance investigator and adjuster was also employed, as was C. E. Yingling, an attorney residing in Searcy, Arkansas, where a number of suits were pending.

Extensive investigations were made, and protracted negotiations were conducted, which had proceeded to the point where settlements had been agreed upon in a number of cases, and drafts were drawn on Chicago Lloyds by McDonald & McDonald, their authorized attorneys. These drafts were not paid, however, as Chicago Lloyds was adjudged insolvent on February 15, 1938. That proceeding was had in the superior court of Cook county, Illinois, and the director of insurance of that state was appointed liquidator. That official immediately notified Canale & Company that Chicago Lloyds would no longer defend the tort actions against Canale & Company growing out of the collision, and would not effect any further compromises of any claims, and that Canale & Company should undertake settlements at its own cost and expense.

Canale & Company thereupon paid certain drafts issued by Chicago Lloyds in settlement of certain claims, and compromised other pending suits, at a total cost of $29,337.39. No one questions the necessity and advantage of these settlements. They were made with the assistance of the attorneys and the insurance adjuster above mentioned.

When Chicago Lloyds received the certificate of authority to do business in this state, it executed the bond required by law to cover liability sustained in this state by its policy holders. The insurance commissioner prepared the bond required by law, which was executed by Chicago Lloyds, but instead of giving surety in the sum of $20,000, as required by law, Chicago Lloyds deposited

United States two and one-third per cent. treasury notes with the Insurance Commissioner in the sum of $20,000. The receipt for this deposit conformed to the bond, and expressed its purpose to be to indemnify persons who had been insured by Lloyds in this state.

The attorneys and the adjuster filed suit on February 14, 1938, against Chicago Lloyds for the compensation alleged to be due them, and attached the deposit in the hands of the Insurance Commissioner. McDonald & McDonald and the adjuster had assigned their claims to Gannaway, but the assignors were made parties plaintiff to this suit.

On April 14, 1938, the attorney general of this state filed suit in the Pulaski circuit court, praying the appointment of a receiver to take over the assets of Chicago Lloyds in this state, and Elmo Walker was appointed receiver for that purpose. After the appointment of the receiver the court fixed September 15, 1938, as the time limit for filing claims in the receivership proceeding.

On May 4, 1938, the Insurance Commissioner of Illinois, as liquidator of Chicago Lloyds under appointment of the Illinois court, filed an intervention in the Pulaski circuit court, in which he alleged that Chicago Lloyds had issued no policies in Arkansas, and that there were no creditors in this state. He prayed that the United States treasury notes, deposited with the Insurance Commissioner of this state by way of a bond, be delivered to him for general liquidation purposes. As the claims of the attaching creditors did not exceed $7,000, they consented to the release of $13,000 of the attached bonds or notes, to be delivered to the receiver appointed by the Pulaski circuit court, and the court made an order directing the Insurance Commissioner to turn over to the receiver $13,000 of the treasury notes. This was done, and the receiver executed his receipt to the commissioner for $13,000 in bonds under date of May 19, 1938.

On May 17, 1938, the court entered an order consolidating the attachment suit with the receivership proceeding, and on August 28, 1938, Canale & Company filed its claim in the receivership proceeding. This claim, was

based upon the liability policy hereinabove referred to and the claims it had been compelled to pay arising out of the collision between its truck and another truck. No one questions the liability of Chicago Lloyds for the full amount of this claim, nor is its liability under the policy for the adjustment expenses and the attorney's fees incident to the settlement of the claims questioned by any one.

In settling these claims a loan was made to Canale & Company by the Memphis agent of Chicago Lloyds who had written the policy, to be repaid out of the anticipated collection of the insurance policy, a circumstance which we regard as unimportant.

Upon this record a judgment was entered sustaining the attachment, and a first lien was given the attaching creditors on the deposit. Canale & Company was awarded judgment for $29,337.39, which was adjudged a second lien. The liquidator's claim was denied, and the receiver was allowed a fee of $2,000.

The most important question in the case is whether the court should have ordered the bond deposit turned over to the Illinois liquidator. The record establishes the fact that on April 14, 1937, Chicago Lloyds issued a rider to the original policy previously issued to Canale & Company, which rider covered such damages as arose out of the collision. At that time Chicago Lloyds had not received its certificate of authority from the insurance commissioner of this state, although the application therefor was pending, and the certificate was actually issued April 19, 1937. The original policy and the rider thereon were issued and delivered in Memphis, Tennessee, and Chicago Lloyds issued no other policy in this state.

We think there is no question as to the purpose or effect of the bond deposit. It was intended to offer additional protection to policy holders whose claims might arise in this state, and this deposit, when made, inured to the benefit of any holder of such policies, even though the deposit was made after the policy was issued. We are of opinion also that this deposit inured primarily to the benefit of the holders of policies covering liabili-

ties arising within this state. It was held in the case of *Standard Lumber Co. v. Henry,* 189 Ark. 513, 74 S. W. 2d 226, (to quote a headnote): "Assets situated within the State of an insolvent foreign corporation for which an ancillary receiver has been appointed belong to the State receivership for administration and distribution by courts of this State; and, after paying the costs of administration, so much of the balance as may be necessary will be distributed to creditors within the State, and any balance remaining will be paid to the domiciliary receiver."

The decision of the Supreme Court of the United States in the Case of *Clark, Commissioner of Insurance, etc.,* v. *Williard,* 294 U. S. 211, 55 S. Ct. 356, 79 L. Ed. 865, 98 A. L. R. 347, sustains that holding.

It is argued that Canale & Company do not come within the holding in this Henry Case, for the reason that the policy was issued and delivered in Tennessee, and that the breach of the conditions of the contract of insurance occurred in that state when the insurer failed and refused to pay as the insurance contract required, and, further, that Canale & Company being a foreign corporation should not be permitted to share in a fund designed to protect Arkansas claimants.

It is argued also, upon the authority of *National Liberty Ins. Co.* v. *Trattner,* 173 Ark. 480, 292 S. W. 677, that the courts of this state will not enforce this transitory action. But we think the distinction between the instant and the Trattner Case is obvious. There a nonresident sued upon a policy issued in another state to recover damages from a fire to property situated in another state, and we declined to entertain jurisdiction. But an entirely different case is here presented. Here, we have a deposit, by way of a bond, to insure payment of claims arising in this state. The policy insured against damages done by trucks operated within this state. The damage insured against occurred within this state, and suits to recover for these damages were brought in this state, and were compromised and settled here. If the rider to the policy did not cover this damage done in this state, it was a

mere scrap of paper, having no value, notwithstanding the premium demanded had been paid.

It is argued that Canale & Company is not an Arkansas claimant, and is not, therefore, entitled to participate in the bond, because it is a foreign corporation. And so it is, but it is a domesticated foreign corporation.

In the Case of *Southwestern Gas & Electric Co.* v. *Patterson Orchard Co.,* 180 Ark. 148, 152, 20 S. W. 2d 636, we said: "Of course, by complying with said statute, the foreign corporation does not surrender its identity as a foreign corporation, but continues for jurisdictional purposes to be a corporation of the state of its creation, and may remove proper cases to the federal courts. It is, however, domesticated in this State, and, to all intents and purposes, in connection with its business in this State, is a corporation of this State. It becomes the adopted child of this state. But not so as to all other foreign corporations. Nowhere do we find in our foreign corporation laws any language that makes them corporations of this state. Upon compliance with our laws they are given all the powers of domestic corporations, except such as are prohibited by the Constitution. The power of eminent domain is expressly extended to traction, light and power companies organized in this state by §§ 4042 *et seq.,* Crawford & Moses' Digest, but not to foreign companies, the Legislature evidently considering that it had no power to do so without first requiring them to become domesticated."

But however that may be, the fact remains that Canale & Company seeks to enforce a claim arising in this state against the deposit to indemnify claimants. Had the policy here sued on been a fire—rather than a casualty—policy, and had the loss been the destruction by fire of any one of the warehouses owned by Canale & Company in this state which was covered by the fire policy, and secured by the statutory bond it would hardly be questioned that the insured was entitled to the protection which the bond was intended to afford. A nonresident, whether an individual or a corporation, might own and insure against fire property located in this state, and in

the event of a fire loss would have the same right to participate, if found necessary, with resident citizens and domestic corporations in the protection which the statutory insurance bond was intended to afford. The nonresident would not be denied that right because of nonresidence, but would be accorded that right, for the reason that he has a claim arising within this state, which is entitled to the security of payment which the bond was intended to afford. In the case stated the insured is a creditor within this state notwithstanding his nonresidence, because the event insured against occurred in this state, and was indemnified by the bond which the insurer executed.

It is insisted that Canale & Company is not entitled to participate in the distribution of the deposit, for the reason that it is a member of Chicago Lloyds. We do not so interpret the policy. If Canale & Company may not have the benefit of this deposit, no other policyholder may.

We conclude, therefore, that Canale & Company should be allowed to share the benefits of this deposit; and we are of opinion also that it was error to subordinate their claim to that of their attorneys and the adjuster. We perceive no reason why those claims should have priority over that of Canale & Company. They all have the same origin. The attorney and the adjuster may recover only because the policy so provides, but the policy also provides that Canale & Company may recover. They are all Arkansas creditors, but they are equally so, and we know of no authority for preferring one over another. The parties to this litigation are the only persons who have filed claims with the receiver, and as all cannot be paid in full, they must be paid equally and ratably, and the judgment will be modified to so provide. The attached bonds will be added to those in the hands of the receiver, and the sum total, or the proceeds thereof, will be prorated after costs have been paid.

While, as stated, no one questions the reasonableness of the attorney's fees as to the amounts charged, it is insisted by counsel for the Illinois liquidator that no fees

should be paid, and that the entire deposit should be turned over to the liquidator. We have held against that contention, but it does appear that the entire fee claimed by McDonald & McDonald should not be allowed for this reason. Their claim was for the sum of $2,745.35, and was allowed in that amount. It is conceded, however, that of this total only $1,244.95 was charged as fees and expenses in connection with this case. The difference was for other fees and services rendered Chicago Lloyds. McDonald & McDonald are not Arkansas creditors as to this difference; they are general creditors as to this difference, and must present their claim for this difference to the Illinois liquidator, for allowance. The fact that they are Arkansas claimants to the extent of the fee earned in this case does not entitle them to add to this fee other independent claims which they have against Chicago Lloyds.

The judgment in favor of McDonald & McDonald will be modified by reducing it to the sum of $1,214.95.

It is insisted that the fee allowed the receiver is excessive. And so it is. The insolvency of an insurance company requiring appointment of a receiver should not be regarded as an opportunity to earn large fees, but, rather, as a calamity or misfortune, which should be palliated as much as may be to protect the interests of persons involved. Of course, sufficient fees should be paid to induce competent persons to serve as receiver or to render other essential service, and the capacity and responsibility of the receiver is not an improper matter to take into account in fixing his fee. Here, there is no question about the capacity and responsibility of the receiver, nor of the efficiency with which he discharged his duties. But, even so, his duties were not involved or arduous, and the record does not show the performance of any duty for which a greater fee than a thousand dollars should have been allowed. The judgment will be modified to reduce the receiver's fee to that amount.

As modified in the particulars indicated, the cause will be remanded with directions to the Pulaski circuit

court to distribute the treasury notes, or the proceeds thereof, in the manner herein indicated.